Mr. Justice Hagner
delivered the opinion of the court:
We have examined with care the numerous questions presented, and desire to express our obligations to the distinguished counsel engaged on both sides for the assistance they have afforded the court by their arguments. These questions will be noticed in order.
The first is the motion for a new trial.
The second, filed on the same day, is a motion in arrest of judgment upon the ground of alleged error in the admissions before the jury of evidence of services rendered by the plaintiff'for the District of Columbia, in the underpinning of various private houses in the city of Georgetown. Those two motions were overruled, and they are brought up here by bill of exceptions, according to the settled practice of the court as authorized by statute.
The next motion was that the judgment should be stricken out, in compliance with the terms of a stipulation filed in the case.
Then follows a motion to vacate the judgment because of fraud in its obtainment. These last two motions were certified to be heard here in the first instance; and, therefore, none of the questions involved are before us, technically, upon appeal.
The plaintiff’s counsel cited authority to show the care and circumspection that should be exercised by the courts in granting such motions, and their unwillingness to do so. That authority is properly applicable when the motion is made to strike out a judgment after the term has passed; but these motions were made at the term at which the judgment was rendered, and it is well understood that during the term the judgments of a court are malleable and wholly under its control, and will be moulded and corrected as may best promote the ends of justice. Courts, in acting on such motions, exercise a quasi-equitable jurisdiction, and will not hesitate to strike out a judgment which they believe is inequitable ; though they are most unwilling to disturb a ver *501 diet where they can see that substantial justice has been done.
The first and second reasons assigned in support of the motion for a new trial are in these words :
“ 1st. That the court was without authority to try the case in manner and form as the same was tried.
“ 2d. For error in directing the parties to proceed in the trial of said cause in the manner and form as the same was proceeded in.”
In support of these two reasons several objections to the verdict have been presented for our consideration.
• The first is addressed to the constitution of the jury. Was that jury, as it was constituted, authorized to render a verdict in this case on the 5th of October, 1878 ?
By the second rule of this court it is declared that the May term of the Circuit Court commences on the second Mouday of May, “ which term shall not continue beyond the third Saturday of July, except to finish a pending trial.” The third Saturday of July, 1878, was the 20th of that month.
It appears that on the 17th of July this case was called and a jury of twelve from the May panel was sworn, and the jury was then respited until Tuesday, the 10th day of September, and the rest of the May panel were discharged.
When .the court reassembled in September eleven of these jurors responded when called. James E. Bogerson, the twelfth juror, was excused from further service on the jury, and from three talesmen then summoned by the marshal another juror was sworn in his place, and on the next day another of the May jurors was excused, and a new juror selected from three talesmen was sworn in his place, so that the jury, as finally formed, consisted often of the May panel and two taken from the talesmen. It is worthy of remark that there was no striking by the parties, the court directing the clerk to swear the first of the talesmen on the list. The court then ordered that each of the jurors should be called and sioorn separately, and they were sworn accordingly.
Now, was there a “ pending trial ” on the third Saturday *502 ill July, within the meaning of the rule ? The only feature of a “ pending trial ” appearing on that day was the fact that a jury from the May panel had been sworn in the case. But that jury then impaneled did not try this case, although ten of the persons who constituted it were among the twelve persons who were impaneled and sworn afterwards, on the 11th of September, 1878, when it may well be questioned whether the only feature of a “pending trial,” existing on the third Saturday of July, had not then disappeared.
The court, under this practice, could equally in turn have excused every juror of the May panel and supplied their places successively from talesmen, and the jury would then, have been constituted without a single member of the May panel. And admitting that the jury as impaneled would have been a lawful one, and that the mere swearing of a jury fulfilled the condition of the rule as to “ a pending trial,” still, as this swearing of the jury took place on the 11th day of September, it could scarcely be considered as proof of a pending trial on the third Saturday of July.
For these reasons we are constrained to express very grave doubts whether that jury was competent to proceed to the trial' of that case in September, 1878.
' The case then came on to be heard on the defendant’s motion to strike out the plaintiff’s exceptions to the. auditor’s report, and some of them were stricken out and others retained ; whereupon the plaintiff moved for leave to file exceptions.
This motion was denied, and the jury was respited till the next day, and on that day was again respited to the 16th of September. On that day the plaintiff, with the consent of the defendant, moved the court for leave to withdraw a juror and continue the case, “and the same having been heard said motion was refused.” And thereupon the court ordered that its ruling as to the plaintiff’s leave to file his amended exceptions be set aside, and leave was granted the plaintiff to file them, and they were filed. The defendant thereupon moved for a continuance, which was refused, and the court ordered *503 that the trial proceed, and the jury were again respited until the next day.
In our opinion this refusal of the court to allow the continuance was error.
The exceptions to the auditor’s report formed an exceedingly important part of the pleadings, and here were new exceptions filed, new issues introduced into the cause, which were not part of it at the time the jury had been impaneled to try the case “ upon the issues joined ” at the time they were so sworn. For the filing of those new pleadings necessarily involves new and different issues. The defendant insisted that the court should have allowed this continuance in accordance with the fourth section of the act of Maryland of 1785, chapter 80, which reads as follows :
“ IV". And be it enacted, That the courts of law shall have full power and authority to order and allow amendments to be made in all proceedings whatsoever before verdict, so as to bring the merits of the question between the parties fairly to trial. And if amendment is made after the jury is sworn, a juror shall be withdrawn, and in all eases where amendments are made the adverse party shall have time allowed, in the discretion of the court, to prepare to support his case upon the state of the proceeding so amended, and such costs shall be allowed the party against whom such amendment may be made as the court ^hall think just.”
In our opinion the requirement in this section, that “ a juror shall be withdraivn” where “amendment is made after the jury is sworn,” is mandatory, and the party against whom the amendment is made has an absolute right to a continuance in the case referred to, which the court is not at liberty to refuse.
And we also think that the words in the next paragraph, “ in the discretion of the court,” refer only to the extent of the time to be allowed by the court, and that the requirement that “ time shall be allowed ” is just as mandatory in its character as is that in the previous paragraph. That this is the proper construction of the section, is made clear from an ex- *504 animation of the Maryland act of 1809 amending the act of 1785, which repeals this fourth section and substitutes for these mandatory requirements the provision that the continuance shall not be made unless the court shall think it necessary for the ends of justice, showing that it was considered necessary to change the original act before the judge could exercise any discretion as to granting the continuance. But we are to be governed by the oi’iginal and not by the amended statute.
We think, therefore, as the juror should have been withdrawn, and the defendant had an absolute right to the continuance, it was error in the court to refuse the motion; and although it was in the discretion of the court to say for how long a time the continuance should be granted, yet it was not clothed with an unlimited power in the matter, but with a judicial discretion, the exercise of which would have been the subject of review if abused.
On the 17th of September the court respited the jury until the 24th, when both the counsel of the defendants and Mr. Totten, of counsel for the plaintiff, withdrew from the case. On the next day the plaintiff and Mr. Cook, his attorney, appeared, and the hearing of the case commenced and was proceeded with (no counsel appearing for the defendants) until the 5th day of October, when the jury rendered a verdict for $133,000 in favor of the plaintiff.
The next point is as to the state of the pleadings. There are two cases, aud the same pleadings, with one exception, are found in both. In one case the third plea avers that there had been a voluntary submission by the plaintiff to the Board of Audit of that particular claim, and that the board adjudged aud determined that Strong had been overpaid on that claim $21,270. In the other ease the third plea avers a similar submission, and that the Board of Audit found that about $10,000 was due Strong, for which a certificate had been duty issued. There were other issues and pleadings, including limitations' by the defendant to ‘ the plaintiff’s claim, and by the plaintiff to the alleged award and satisfac *505 tiou, and also a demurrer desigued to raise a question as to the power of the Board of Audit, &c. Finally the pleadings as to the alleged submissions stood upon the replications by the plaintiff that he did not agree to this submission to the board.
Upon these replications issue was joined, and a stipulation was signed by all the parties, agreeing that the Board of Audit did act upon the 'claims of Strong and did issue the certificate for $10,000, and it was further agreed that this stipulation should be filed in the two cases. The pleas of limitations by the defendants to the plaintiff’s claim, and by the plaintiff to the defendants’ plea of satisfaction, were evidently interposed upon the belief, on the part of the plaintiff' and defendants, that the-statute was a bar to the respective claims and counter-claims therein objected to.
We must assume that they were put in for a purpose and in good faith, and yet the case, as conducted by the plaintiff’s counsel alone, was placed before the jury without the slightest reference to either of these defenses. It is also admitted that no reference was made before the jury to the defenses as to the action of the Board of Audit, or to the stipulation on the subject on file in the case; and it is conceded that none of these questions, thus distinctly raised by the pleadings, were in any manner brought to the attention of the jury who were impaneled to try the issues joined. It is, therefore, manifest that as respects these various questions, involving considerations of the utmost importance to every tax-payer of the District, there was practically no more a real trial of the issues involved than if it had been a case for the most trivial case before a court of pie poudre. It was rather a travesty of a trial or an ex-parte inquest.
There is another peculiar feature in the case which shows clearly, we think, that by an inadvertence, certainly an excusable one under the circumstances, the pleadings in the cases, after the return of the auditor’s report, -were not properly made up'under the act of 1785, chapter 80, section 12, under which the cases were referred to the auditor.
*506 I received last night a copy of the opinion in an unreported case recently decided in the Court of Appeals of the State of Maryland involving the consideration of this Maryland statute. The opinion was delivered by Judge Miller, one of the ablest and most painstaking judges of the court, in the case of Wisner v. Wilhelm.
In this case, which was a suit in assumpsit, the plaintiff filed a bill of particulars of items running over ten years. The defendant filed a set-off; the issues were joined and the jury sworn, when the judge, without the assent of either party, referred the caseto an auditor. The auditor proceeded to take testimony, and filed his report to the court, showing a balance of some hundreds of dollars due the plaintiff". When it came in the defendant objected .to the report, but the court overruled the objection and gave judgment for the amount of the auditor’s award. The plaintiff then moved the court to strike out the judgment for error in entering the same, and the court granted the motion; and at a subsequent term a juiy was sworn, the case tried upon the issues raised by the previous pleadings, and a verdict rendered for the plaintiff". The defendant’s exceptions were taken to the court, allowing the plaintiff" to prove his claims by producing the auditor’s account and report to the jury, and to its refusal to allow the defendant to give any proof of his set-off before the jury, or to controvert any item of the plaintiff’s account.
I will read some portions of the opinion, which, as the decision of the court of highest jurisdiction of the State of Maryland, whose statute is under examination, is entitled to the respect of this court as an authoritative construction of the law:
“ The questions raised by the exceptions taken at the last trial involve the validity of the court’s order appointing the auditor, and his action thereunder. It is to be observed that this was not a reference by rule of court and consent of parties under article 7 of the code; but the court’s action was based upon section 9 of. article 29, which is a transcript of the twelfth section of the old act of 1785, ch. 80. We *507 quote the latter, and the provision is: ‘That in all actions brought or hereafter to be brought in any court of law of this State grounded upon an account, or in which it may be necessary to examine and determine an account between the parties, it shall and may be lawful for the court where such action ' may be or remain for trial to order the accounts and dealings between tbe parties to be audited and stated by an auditor or auditors to be appointed by such court, and there shall be such proceedings thereon as in cases of actions of account.’
“We are not aware that this statute has ever been construed by the Court of Appeals, and the only reported case we know of in which it has been attempted to be put in force is that of Mantz v. Collins, 4 H. & McH., 65, tried in the General Court in 1797. That was an action of debt on the bond of a deputy sheriff and collector appointed by the sheriff, who was the plaintiff in the action, by which the deputy agreed to account to the sheriff as often as he might be required for all money and tobacco he may or ought to have received and collected as such deputy. After pleas of general and special performances, the court, on motion of the plaintiff, appointed auditors under this law, who acted and made their report; but the court quashed it on motion of defendant, Chase, J., saying: ‘The court are of opinion that on the order to appoint, and the appointment of auditors under the act of Assembly, there must be the same proceedings as in cases of actions of account.’ After this the case was tried before a jury in the usual way, upon issues regularly made up by the pleadings. From this opinion of Judge Chase it does not clearly appear for what reason the report was quashed; but, in the argument in the Court of Appeals by Mason and Shaaff, for the appellant, it is said: ‘ The court in this case admitted the necessity of proceeding according to the action of account, and they quashed the proceedings of the auditors because they gave no day to the party.’
“The report, however, states, ‘that in pursuance of the within appointment, in the presence of the parties plaintiff and defendant, who attended for the purpose, we received, heard, and *508 determined the accounts between them, as by an account stated, and hereunto annexed, will show and explain.’ If the ground of the court’s action in quashing this report is correctly stated by counsel, it shows with what technical accuracy such proceeding must be conducted. From that time to the present there is no reference in our reports to this section of the act of 1785. This has probably resulted from the facts, first, that in practice the more expeditious and less cumbersome mode of procedure respecting the reference of causes to referees or arbitrators provided for by the act 'of 1778, chapter 21, section 8, &c., codified in article 7 of the code, and by the statute of 9 and 10 "William III, chapter 15, still in force in this State, (Shriver v. The State, 9 G. & J., 1,) has been generally adopted; and second, because actions of account at common law, or under the statute of 4 Anne, chapter 16, section 27, have in recent times been in a great degree, if not entirely, superseded by resort to a court of equity, where litigants and the profession have found the remedy more convenient and expeditious. There are some cases in which this action has been recognized as still in force in this State, but this recognition is accompanied with the statement that it is nearly obsolete and has been seldom used. In fact, we can find but one instance in which it has been actually resorted to in our courts, and that is the case of Perkins v. Turner, 1 H. & McH., 400, tried in the Provincial Court in 1771, moi’e than a century since. The attempt, however, of the court below to apply the section of the code to the plain and simple case before them, has brought us back to some of the almost forgotten learning on the subjects of actions of account at common law and the proceedings in them.
“It may be gathered from the decision in Mantz v. Collins, as well as from the terms of the section itself, that it extends and can be applied to some other cases than those in which an action of account at common law would lie. We shall assume (though we are far from so deciding) that it could be applied in this case. But if applied it is clear its require *509 ments must be met, for it expressly provides that after the auditors are appointed ‘ there shall be the same proceedings thereon as in cases of actions of account.’ This means, at least, that the proceedings by and before the auditors must be the same as in actions after judgment quod computet is rendered; and what are they ? In 1 Bacon’s Abridgment, title Accompt, letter F, we find the law on this point succinctly but completely stated thus:
“‘In an action of accompt there are two judgments; the first is quod computet; after which the court assigns auditors, usually two of the officers of the court, who are armed with authority to convene the parties before them de die in diem at any place they shall appoint till the account is determined. The time by which the account is to be settled is prefixed by the court; but if the account be of a long and confused nature, the court, on application, will enlarge the time. If either of the parties think the auditors do him injustice he may apply to the court, and if the defendant deny any article or demurs to any demand, it is to be tried and determined in court.’ So in 1 Comyn’s Digest, title Accompt, it is said: ‘Before the auditors the defendant may plead, and the plaintiff' or defendant may join issue or demur upon the pleadings, which shall be certified to the court and there tried or argued.’ And again: ‘ If the defendant plead before the auditors any matter in discharge which is denied by the plaintiff, so that the parties are at issue, the auditor must certify the record to the court, who thereupon will accord a venire facias to try it.’ And the form of such certification by the auditors of the issue made up before them, and the award of a venire for a jury to try it, is found in 2 Harr. Ent., 182.
“ From these authorities it is plain there are some questions of fact and issues of law which auditors have no power to determine, and which must be tried before the court and by a jury, and that the right of trial by jury of such questions of fact was carefully preserved by those who framed and applied these common-law proceedings. The auditors may investigate the items of the account by examination of the *510 vouchers, and then perform the ministerial duty of stating it, and by statute 4 Anne, chapter 16, section 27, they are ‘ empowered to administer an oath and examine the parties touching the matters in question.’ But we nowhere find they have any power to examine other loitnesses and try all the questions in dispute on testimony thus taken, as if they were a jury regularly impaneled for that purpose.
“ Here the court’s order, in effect, empowers the auditor to do that very thing, and his report shows that he did it. Issues had in fact been made up by the pleadings which required the plaintiff and defendant each to prove the several items of his account, and by which the correctness of each and every one of the items contained in the two bills of particulars was disputed and denied, and a jury was actually sworn to try these issues. The court then discharged' this jury, and, without consent of the parties, delegated this power of trial to an auditor. We think no case can be found in which proceedings in an action of account would justify such an order or such action by the auditors, and we are very clearly of opinion this section of the code does not authorize them. In fact, if it were susceptible of being so used, and of the construction contended for by the appellee, it would be in conflict with the sixth section of article 15 of the Constitution, which declares that ‘ the right of trial by jury of all issues of fact in civil proceedings in the several courts of law in this State, where the amount in controversy exceeds the sum of five dollars, shall be inviolably preserved.’
“We have, therefore, no hesitation in pronouncing this order of the court and the action of the auditor thereunder' invalid and of no effect.
“ But apart from this, the appellee, by his own action in the case, has precluded himself from relying upon thi3 order and report. At his' instance the judgment on the report (which an action of account is the only one in favor of the plaintiff that can follow the judgment of quod computet) was stricken out, and at his instance ‘a trial of the case’ was granted, and a .ne.w’ jury sworn. This second jury was sworn *511 to try the issues joined in the pleadings, and he could no longer avail himself in that trial, which he thus sought and obtained, of what had been done by the auditor. In that trial the report of the auditor, so far front being conclusive of what is stated, was mere hearsay, and wholly inadmissible in'evidence.”
It appears from all this very clearly that the issues raised by the exceptions to the auditor’s report, in the cases at bar, were the real substantial issues which were properly for trial before the jury. It was, of course, quite competent for the counsel on both sides to agree that the testimony before the auditor should be l’ead to the jury, and also that the case should be tried upon the previous pleadings, irrespective of the auditor’s report. JBut no such agreement was made, nor was there any order of court setting aside or quashing the audit. On the contrary, it appears that there were exceptions taken to it on both sides; and hence the trial should have proceeded before the jury upon the issues raised by the exceptions to the report, and not upon those raised upon the antecedent pleadings.
We think, therefore, there was error in this respect, as to the mode in which the inquiry was conducted before the jury.
4th. Another ground of exception to the court’s refusal to continue the case involves the consideration of the effect and force of the stipulations for a continuance entered into by the counsel of the parties.
The attorneys of the court are officers of the court. They form its light hand, and the court, as a judicial body, can no more act efficiently without their faithful co-operation than the physical body can act effectively without the aid of its members.
They act before the court under the highest sense of professional obligation, subject at all times to the summary control of the court for any departure from the proper line of professional duty.
It is an every-day thing for counsel to enter into stipula *512 tions with one another, and until it appears that such agreements are' beyond the competency of attorneys, and are in opposition to the course of public justice, undoubtedly the court will recognize them, and interfere to prevent their violation by either of the parties.
Take, for instance, the case at bar. Suppose a stipulation had been entered into that the case should not be tried, and that at the very moment the plaintiff was summoned, as we have heard, to the bedside of his dying wife, himself and his witnesses absent, and his counsel unprepared to try his case, the counsel of the defendant should have insisted upon proceeding with the trial, would it have been tolerated by the court that the defendant should be allowed to press the case to trial under such circumstances ?
' The language of the stipulation, to be found on page 36 of the record filed in the case by the attorney, is:
“It is, this 13th day of September’, A. D. 1878, mutually agreed and stipulated that a juror may be withdrawn, and that said causes (as consolidated) maybe continued until the next term of this court.”
This paper was properly before the court, and it cannot be contended that it contained anything indecorous or extraneous, and, in our opinion, when it was brought to the knowledge of the court the case should have been continued.
The court cannot admit that there was any power in either of the attorneys, nor in either of their principals, to withdraw from their stipulation against the consent of the other.
The power of the attorney to bind his client by stipulations in the conduct of the case is settled by a multitude of cases; but we will refer to one case, not cited at the bar, showing the extent to which this principle is recognized by the courts. We refer to the case of Kent v. Ricards, 3 Md. Ch. Rep.
The facts of the ease were these: Ricards held a large claim against Kent, which he placed for collection in the hands of an attorney, who recovered judgment against Kent. Shortly afterwards the attorney disappeared. When the plaintiff learned that his case had been deserted, he employed *513 another attorney, who found the judgment on the docket unsatisfied, and that no execution had been issued.
By the imperative orders of the plaintiff, the second attorney ordered execution to issue. Mr. Kent then came in and filed a bill for an injunction, alleging that sooq after he was sued he had delivered a large amount of collaterals to the first attorney, with a distinct agreement on his part that no recovery was to be had against him in the principal case until the collaterals should have been collected, and all that could be realized from them applied to the payment of his debts; that after he found that a judgment had been rendered he remonstrated with the attorney, and would have proceeded to have it stricken out, except that the attorney promised that no execution should be issued until the collaterals had been collected, and that the attorney had collected large sums from the collaterals which Kent claimed should be credited on the judgment. The defendant answered that he had never heard one word about these arrangements untili he read the bill. He had no communication with his attorney on the subject, and if the latter had made any such aiv rangemeut it was without his authority; that he had received.! no money from the collaterals, and that neither he nor his-present attorney had any knowledge of the matters charged: in the bill, and he submitted to the c'ourt whether he-should. be held at all responsible for the unauthorized acts, of the attorney. Chancellor Johnson decided that the facts charged; justified the granting of an injunction to restrain tha-enforcemeut of the judgment until the collection or ascertained insolvency of the collateral, and that the fact that Bieards had; given no authority to the attorney to enter into the arrangement, and had no knowledge of his acts until the bill was-filed, did not entitle him to repudiate his attorney’s agreement. In the course of his opinion he held this language:
“It was decided by the Court of Appeals in the case of Henck v. Todhunter, 7 H. & J., 275, that, by the law and practice of the courts of this State, a party might appear either in propria persona or by attorney; and whenever the appear *514 anee of an attorney is entered on the record, it is always considered that it is by the authority of the party, aud whatever is done in the progress of the cause by such attorney is considered as done by the party and binding upon him; and whether the attorney is faithful to his trust or not, is a matter between him aud the party, his client, to whom he is responsible for the faithful discharge of his duty.”
These stipulations are recognized in the rules of this court, with the single provision that they shall be iu writing before the court will take notice of them. They effect an immense saving of time and costs by the admission of facts. In making them the counsel are conclusively presumed to act in behalf and by the authority of their clients, and whatever is done by them is esteemed the act of and binding on their clients, with the exception that an attorney cannot compromise a case, take a bond for the debt, or anything less than payment, without the authority of the client. We think there is no earthly objection to the stipulation first signed by the attorney, and that the parties, plaintiff and defendant, were bound by it, and that they should not have been permitted to repudiate it.
There is another stipulation, however, to be found in the record at page 88, signed as well by the plaintiff and defendant as by their respective attorneys, under their seals, in condemnation of which a great deal has been said in the argument by the plaintiff’s counsel.
It is insisted by the plaintiff’s counsel that it contains • features of so improper character that they nullify and render nugatory whatever benefit the defendant might otherwise have derived from it. It has been urged that it is disrespectful to the court, and that the natural effect of such stipulations is to wrest the conduct and control of the causes from the court and lodge it in the hands of the attorneys.
It is worthy of remark that this stipulation was not introduced to the court’s attention by the attorneys, and was not designed to be presented to the court, but that it appears here by the act of the plaintiff' himself, and is on file by the order *515 of the court. Even if it be the fact that, if examined, some portions of it might be liable to some of the criticisms urged against it, yet it is obvious that parties might make agreements with each other outside the case, and yet concerning it; as, they may write letters to each other about their cases, which might be quite unsuitable to be introduced in the case, but which, if it appears that they were not designed to be brought to the attention of the court, it would seem unwise and unnecessary to visit with censure should they happen to be brought unintentionally to its notice.
With respect to the suggestion that to withhold censure of' the features alluded to in this stipulation would be to encourage attempts to take the management of the business of the court out of its control, we may remark that we have no apprehension that any such improbable attempt will be made, and the danger is rather imaginary than real. It is enough to say that if it ever should be made the court will be prepared to meet it.
The laws impose upon this court the final responsibility as to the order of business; but when these stipulations are made by counsel or parties and acted upon by the court, they become the act of the court.
But surely the best way to discharge the possibility of such a .contingency would be for the court to show to the attorneys that they regard them as gentlemen whose word is sacred when once pledged, and that they will always expect and require from them the utmost good faith — uberrima Jides.
Here were two important cases, in which upwards of $400,-000 was claimed, affecting the interest of almost every man in this District. A very large verdict was recovered. Whether or not that amount was properly due, of course is not for us to decide.
Most important questions were involved, and either party, if he knew the trial was properly about to proceed, would naturally fortify himself by timely preparation of the law and facts, would secure the attendance of his witnesses, and *516 make all preparations commensurate with the importance of the case.
The counsel for the defendant were induced by force of these stipulations to believe, and had a right to believe, that the cases would not be pressed, and they were, therefore, altogether unprepared to go on with the trial.
Under these circumstances the conduct of the plaintiff in insisting upon the repudiation of the stipulation which he himself had signed after it had been prepared by his own counsel, and in openly stultifying himself by insisting he did not understand the effect of his own act under seal, operated a legal surprise, to say .the least, upon the defendant.
In our opinion, for this court to sustain a verdict obtained under such circumstances would be a reproach and scandal to the administration of justice.
There are other very important questions involved in this case, which are distinctly raised by the bill of exceptions. One is as to the liability of the District of Columbia to pay for the undei’pinning of private houses in Georgetown. Another, of greater importance still, is whether or not the plaintiff' was entitled to credit the so-called “ certificates of indebtedness” at their alleged market price, instead of their face value. A large part of this claim — some $70,000 — appears to depend on this question.
There may be a multitude of cases of a similar character growing out of the claims of the hundreds of contractors who have had dealings with the city government. Now, if these important questions were at all discussed before the court at the trial below, they certainly were not discussed by counsel for the defendants, and, therefore, so far as they were concerned, they went sub silentio before the court and jury. We might decide upon them now, but, as the argument before us was confined rather to other points, we shall forbear to express an opinion upon them, preferring that they shall be properly argued on the new trial below.
We have noticed all the questions which we think it important to decide here, and we decline to- enter upon the *517 consideration of any other matters not involved in the merits of the case.
One word more. It is always within the discretion of the court, in awarding a new trial, to grant it upon terms; and the apportionment of the costs is a familiar mode of exercising that discretion. "We have considered'whether we should, modify what would otherwise be the rule in this case, and have come to the conclusion that no such change should be made, and that the plaintiff should pay the costs of the trial below, and of these motions, which necessarily resulted from his own faithless act.
The judgment of the court is, that the judgment of the court below' be stricken out, and the case be remanded for a new trial.