###### IN THE

# COURT OF APPEALS

###### OF

# MARYLAND.

---

*December Term,* 1837.

ANDREW SHRIVER *vs.* THE STATE OF MARYLAND *use of* CHARLES DEVILBISS.—*December,* 1837.

By the statute 9 and 10, *Wm.* 3d, *ch.* 15, which has been received and adopted in this state, the process of attachment to enforce awards, has been extended to all cases, whether the reference is of an action depending or not; provided, that when no suit is depending, it is stipulated in the agreement, that the submission shall be made a rule of court.

Whether the reference is by rule of court, or agreement out of the court, the power of the arbitrators depends upon the terms of the rule, or the language of the submission, and their proceedings in both cases are the same.

When a reference is made of a suit depending, the rule of the court recites and evidences the consent of the parties, and the terms of the submission, and is in general the only evidence of the agreement, which in such case need not be in writing.

In the case of a reference under the statute, the consent must be in writing, and proved in the mode prescribed; but in both cases, the power of the arbitrators depends upon the terms of their appointment, and their awards in each case will be enforced by attachment.

By the 8th section of the act of 1778, *ch.* 21, the courts are required to give judgment on awards made in causes instituted, or to be instituted, and to issue execution, as upon judgments on verdict, confession, or *non suit,* and the practice under this act has been to institute a suit, amicably or otherwise, and then by a rule of reference to name the arbitrators, the subjects of the submission, and the time, &c. within which the award is to be returned. This act is remedial, and should receive a liberal interpretation.

` 1 . v.9

Shriver *vs.* The State of Maryland.—1837.

When an award is made and returned pursuant to the act of 1778, *ch.* 21, which the ordinary judgment of the common law courts may direct to be done, and to enforce, which the known executory writs of such courts are the appropriate process, such writs will be issued to enforce the judgment. But if the award should direct that to be done, to compel which, the ordinary writs would be inappropriate, the attachment must be resorted to, as before the act of 1778.

The act of 1778, has given the remedy by execution, when a cause is instituted, not by means of a previous verdict and judgment, but by directing that judgment shall be entered at once on the award, when returned and ratified as the act requires.

When a reference is made of a depending suit, the act of 1785, *ch.* 80, *sec.* 11, requires the case to be continued; but the omission to enter the continuances, is merely clerical, and this court can correct the error, without sending the record back to the county court.

When a time is limited for the completion of the award by the rule of reference, and the parties afterwards by agreement change the day, this court would hesitate to say, that either party could object, that the award was not made within the time first limited.

APPEAL from *Frederick* county court.

This was an action of *debt* commenced on the 19th February, 1831, on the testamentary bond of *Andrew Shriver*, to perform the office of executor of the last will and testament of *John Shultz*, late of *Baltimore* county, deceased. After an assignment of a breach, the parties agreed that the cases now depending between them, and all matters in dispute or unsettled between them, should be referred to *Gideon Bantz* and *Samuel Carmack*, with power to choose a third person in case of disagreement, to act in conjunction with them for their final decision of the same. The said matters in dispute to be referred and acted upon under the following terms, to wit: the said *Shriver* is to charge himself with all the proceeds of the estate of *John Shultz*, deceased, whose executor he is, in the same manner as if he had made a final settlement of said *Shultz's* estate, and had received all the money due and growing due to the same, subject to all legal and proper allowances. It is also to be admitted by said *Shriver* that *William Devilbiss*, one of the children of *Ann Maria Devilbiss*, deceased, is dead intestate, and that the said *Charles* is to receive his share of said *William's* part of said *Shultz's* estate, so far as he may be entitled to

the same as his brother, under an administration to be had upon said *William's* estate. Neither of said parties shall plead the statute of limitations to the claims of the other. It is also to be the right of the said parties, to appear before the said referees by their counsel, to examine the testimony and argue the case. This reference is to comprehend all unsettled matters of every description, whether arising or growing out of any immediate transactions between the said parties, or between either of said parties and any other person or persons, provided the other party has a *bona fide* interest therein and provided said claims do not arise since this reference. The said award to be signed by at least two of said referees, and to be made and ready to be delivered to said parties on or before the 1st June, 1832. The parties extended the time of making the award first, to 1st August, 1832, secondly, to 22d October, 1834.

And moved the court that the matters in controversy between them, as set out in said agreement, be referred accordingly, whereupon by consent of parties as set forth in said agreement, the same was ordered to be referred to *Gideon Bantz* and *Samuel Carmack,* and in case they disagree, they are to choose a third person, and that the said arbitrators or any two of them, when the whole matter concerning the premises between the said parties in variance being fairly adjusted, have their award in writing, under their hands and seals before the court here, with all convenient speed according to the terms of said agreement, and that judgment of the court be entered according to such award.

Afterwards the arbitrators returned the following award :

We, the subscribers, appointed referees by *Frederick* county court, in this case having given due notice to the parties of the time and place of hearing their respective allegations and proofs, and having heard and duly considered their said allegations, proofs, &c. do award and determine that the said *Andrew Shriver,* is indebted to the said *Charles Devilbiss,* the plaintiff, in manner and form as the said plaintiff hath declared against him ; and we do further award and determine, that judgment for the plaintiff be entered in the

said cause for the debt and damages, in the declaration and costs, to be released on payment of the sum of $4,332 04, with interest from this date and costs until paid. This award to be considered as a full and final settlement of all claims now existing between the said parties, and all differences and disputes in relation to all claims which the said *Charles Devilbiss,* has against the said *Andrew Shriver,* as executor of the last will and testament of *John Shultz,* deceased, also on account of the partnership, in relation to the tan-yard carried on by the said *Charles,* and the said *Andrew,* also for the value of the improvements made by said *Charles,* on the property or farm which he owns, in common with the said *Andrew,* and for all other claims or demands of said *Charles* of every kind against the said *Andrew,* and also in full of all claims and demands of the said *Andrew* against the said *Charles,* for his store account, his mill account, his tan-yard account, his account for claims placed into the hands of said *Charles,* as constable, or otherwise, for collection, his claim for rents and profits on the farm which they hold as tenants in common, the bond of *Charles* assigned to said *Andrew,* and of all other claims and demands of every kind whatsoever, at this time, of the said *Andrew,* against the said *Charles* in his individual capacity, as also as administrator of his brother, *William Devilbiss,* deceased, the said *Andrew's* share, as assignee of *Samuel Devilbiss,* of said *William's* estate. And on the payment of the aforesaid sum of money by the said *Andrew* to the said *Charles* as hereby is awarded, the said parties shall each execute and deliver to the other, a receipt and release in full of all claims and demands up to this date, it being the object of this award finally to settle all disputes, claims and demands whatsoever, between the said parties. Given under our hand and seals, this twentieth day of October, 1834.      Gd'n Bantz,      [*seal.*]

*Fred'k, Oct.* 20, 1834.      Sam'l Carmack, [*seal.*]

Notice of the award being given to the defendant, and of a motion for a judgment upon it, the defendant filed in arrest of, the following reasons :

1. That the matters submitted to the decision of the arbitrators, were so submitted to them by said *Charles Devilbiss*, and *Andrew Shriver*, by their own immediate act and without any rule of court.

2. That the submission comprehended not merely the matters in issue, in the several suits then depending in this court, which are mentioned in the said submission, but various other matters then unsettled between them, not in issue, in said suits, and which are specified and mentioned in said submission.

3. That it was not only not a part of the submission, that the award should be returned to court, but it was the clear intention of the parties, that the suits in court should be at an end by the said submission, and that the award should be delivered to the parties themselves.

4. Because this court in giving judgment upon the case, upon the motion of the said state, at the instance of the said *Charles Devilbiss*, cannot fully execute the said award in all its parts, and the said *Andrew* suggests that by the said award he is required to pay a certain sum to the said *Charles Devilbiss*, and that said *Charles Devilbiss*, and he, the said *Andrew*, are to execute mutual releases.

The county court ruled the objections to be insufficient, and rendered judgment for the state, for the use of the equitable plaintiff, to be released in the payment of the sum mentioned in the award, with interest and costs. The defendant appealed to this court.

The cause came on to be argued before STEPHEN, DORSEY, CHAMBERS, and SPENCE, Judges.

WILLIAM SCHLEY, for the appellant, contended :

1. That the cause was not referred within the meaning of the act of 1778, *ch.* 21, *sec.* 8, which applies only to cases instituted, and cannot be made to comprehend other matters than those involved in the suit. But this reference embraces various other matters, besides those so involved, and which

could have been adjudicated in the then depending controversy. The provisions of the act of 1785, *ch.* 80, *sec.* 11, demonstrates the propriety of this construction of the act of 1778. By the act of 1785, either party is authorized to move to reinstate the cause, if an award is not made in time, but of course when the cause is reinstated nothing is in controversy, or to be decided, but what was originally in litigation between the parties.

Suppose in this case, a motion had been made, and had prevailed to reinstate the cause; would all the extraneous matters submitted to, and decided by the referees have gone along with it, or, would not the county court have been confined to the matters originally in dispute ?

The statute 9 and 10, *Wm.* 3d, *ch.* 15, is not in force in this state, but even under that statute, the *English* judges have never given judgments directly upon awards. If therefore the judgment in this case can be supported, it is under the *Maryland* law.

In *England* under the authority of the statute, parties may make any controversy a rule of court, whether there is a suit depending or not. 1 *Saund. Rep.* 327, *ante* (*c.*) 2 *Chitty Pr.* 79. *Nichols vs. Chalie,* 14 *Ves.* 267. 11 *Law. Lib.* 1. By the common law, nothing but a cause pending could be so referred, and the *English* statute not being in force here, the complex reference made in this case, could not be made a rule of court. *West vs. Stigar,* 4 *Har. and McHen.* 490. By the act of 1778, the courts are to give judgment on the award, as in case of verdict, or confession, and therefore the judgment must be confined to the points involved in the pleadings, because there could be no verdict upon, or confession embracing other points.

2. But even if it can be considered as a reference of the cause, within the meaning of that act, still the cause was not referred by rule of court, within the meaning of said act.

3. That at all events *the rule,* if any, is not in conformity with the agreement of the parties; and the cause by the terms, and manner of reference is discontinued.

The original agreement, was that the award should be made and delivered to the parties, by the 1st June, 1832, but the rule extends the time to the October term, 1834, being the 28th day of the month. This was six days later than the 22d, the latest period to which the time was extended by the agreement of the parties. But the rule differs from the agreement in another respect. The latter requires the award to be delivered to the parties, whilst the former directs it to be returned to the court. Under the agreement the arbitrators might have returned the award to October term, 1832, whilst by the rule the parties were discharged until October term, 1834.

The giving day from October term, 1832, to October term, 1834, was a discontinuance of the cause.

Here it appears, that the cause was continued from 1832 to 1834, thus passing over several intervening terms, not by misprision of the clerk, but by the order of the court, and consequently the defect is not amendable here. The act of 1809, applies to the case of a verdict, or cases in which the pleadings may be amended when the amendments are omitted in the county court. But the defect here complained of is incurable; because the error is not in the record, but in the proceedings of the court itself. Amendments are allowable, when the record does not conform to the truth of the cause, but are never made, when the record as it stands speaks the truth, and the amendment would be a departure from it. That a neglect to enter the continuances, works a discontinuance of the action is clear. 1787, *ch.* 9, *sec.* 6. *Munnikuyson vs. Dorsett,* 2 *Har. and Gill,* 374. Prior to the act of 1785, *ch.* 80, the mere reference of a cause was a discontinuance. *Camp and another, adm'rs of Clark vs. Root,* 18 *John.* 22. *The People vs. The Onondaga Common Pleas,* 1 *Wend.* 314. *Larkin vs. Robbins,* 2 *Ib.* 506. *Bean vs. Parker and French,* 17 *Massa.* 591. *Tillard's lessee vs. Fisher,* 3 *Har. and McHenry,* 118.

4. The time limited for making the award had elapsed before it was made. It is true, it was enlarged by consent

of the parties, but no action of the court was moved for, or had for the enlargement of the time. When the parties agreed to enlarge the time, the court should have been consulted, and shaped their rule accordingly. The award which was made in conformity with this new agreement, was not made under the rule of court. *Hall vs. Hall,* 3 *Con. Rep.* 308. If the rule allowed until October, 1834, it was not warranted by the original agreement, upon which it was founded, and was for that reason void. 2 *Tidd.* 876. *Watson on Arb.* 86. *Mott vs. Anthony,* 5 *Mass.* 489. *Owen vs. Hurd,* 2 *Durnf and East.* 643. If the rule did not give until October, 1834, but the postponement until that time, rested upon the agreement of parties made subsequently thereto, then the award for that reason is void. An action cannot be maintained on an arbitration bond, when the time is enlarged by the parties. *Freeman vs. Adams,* 9 *John.* 115. 3 *Term Rep.* 592, (*note.*) These objections are open upon the present appeal. *Munnikuyson vs. Dorsett,* 2 *Har. and Gill,* 374. *State use Charlotte Hall School vs. Greenwell,* 4 *Gill and John.* 407. *Sasscer vs. Walker's executors,* 5 *Ib.* 102.

5. But the award is ineffectual for another reason. It directs that to be done, which the judgment of the court cannot effect. How can the court, by its judgment, compel the parties to execute mutual releases? This can only be done by attachment, which issues upon the ground of contempt, for disobeying the rule of the court. In *England,* after a reference, by rule of court, the cause is gone, and the courts afterwards interfere only because of their rule, the non-observance of which is considered a contempt. This is always the case, unless a verdict is previously taken to secure the award, and then the cause is retained.

F. A. Schley and Dixon, for the appellee.

The act of 1825, *ch.* 103, does not permit the appellant to raise any points in this court, other than those which were raised in the county court.

The first objection then is, that the reference was of matters besides those which were comprehended in the suit referred. But the parties have an undoubted right to prescribe the terms of the submission, and having done so, and got the court to adopt them, they cannot now object to the award, because of those very terms. 2 *Chitty General Pr.* 86, 88.

At the common law, and prior to the *Statute of William,* it was competent to parties to refer, by rule of court, other questions of dispute than those involved in the legal controversy. 2 *Tidd.* 872, 875, 876. 11 *Law Lib.* 2. In this respect the statute was only declaratory of the common law. *Manser Weaver and another,* 23 *Eng. Com. Law Rep.* 73. 1 *Strange,* 695.

The reference under the statute must be in writing, which must stipulate, that the submission shall be by rule of court; and such reference will extend to other questions than those embraced in the suit. *Lucas, ex'r Dem. Markam vs. Wilson,* 2 *Burr,* 701. The only effect of the *Statute of William,* was to place controversies out of court upon the same footing as those in court, and it is a mistake to suppose, that this statute is not in force here. This being the case, it is no valid objection, that the reference carried with it questions of difference not involved in the legal controversy. The agreement is to be regarded, as incorporated in the rule, which was based upon it, and the parties now can urge no objection in opposition to their own agreement. *Cromwell vs. Owings,* 6 *Har. and John.* 16. 6 *Com. Dig. Arb.* 1. *Craven vs. Craven,* 2 *Serg. and Low.* 243. *Pearse vs. Cameron,* 1 *Maul. and Sel.* 675. 2 *Term Rep.* 646. *Yates vs. Russel,* 17 *John.* 461. *Camp vs. Root,* 18 *Ib.* 22. 1 *Coxe Rep.* 71. The act of 1778, *ch.* 21, *sec.* 8, made no change in the preexisting practice in regard to references, by rule of court, except to entitle a party to a judgment on the award, as upon verdict, and consequently as before the act, such references are not confined to the matters in issue in the cases depending. Nor does a reference of a pending suit operate

a discontinuance; for the act of 1785, *ch.* 80, provides for the continuance of the cause, and for the refusal, or death of the arbitrators, or their omission to return their award within the period limited for that purpose.   In deciding the cause in 3 *Har. and McHenry*, 118, this act was not referred to, and in 2 *Gill and John.* 482, the court says the 11th section of the act is positive, that the cause shall be continued.

The direction, that reciprocal releases shall be executed by the parties, does not vitiate the award, because that portion of it may be enforced by attachment, but even if it could not the whole award is not, on that account, void.

There is nothing in the objection urged now for the first time, founded upon the agreement of the parties to enlarge the time for making the award, for as there is nothing in the record to show *when* such agreement was made, the court may, and ought to presume, that it was made before the rule of court, and the whole of the agreement, embracing the stipulation to extend the time, is to be considered as constituting a portion of the rule.

But it was perfectly competent to the parties to enlarge the time without the order of the court.  *The King*, (in aid of *Mytton*,) *vs. Hill, et al*, 3 *Eng. Exc. Rep.* 249.   9 *Law Lib.* 43.   *Evans vs. Thomson*, 5 *East.* 189.   *Brewer vs. Kingsly*, 1 *John. Cases*, 334.   The objection which rests upon the omission to enter continuances cannot prevail, because the parties having agreed, and the rule of the court directed, that the award might be returned to October term, 1834, there could be no necessity for the appearance of the parties during the interval, and the continuance of the cause from term to term.   *Cromwell vs. Owings*, 6 *Har. and John.*   But even if such continuances ought regularly to have been entered, it is in the power of this court now to order them, under the act of 1809, *ch.* 153, *sec.* 3.   1 *Tidd. Pr.* 183.   2 *Tidd.* 733, 960.

CHAMBERS, Judge, delivered the opinion of the court.

We think the appellant has not successfully maintained the proposition, that this case is not within the act of 1778, *ch.* 21.

Submissions to award, both by rule of court, where an action was depending, and by agreement without suit, are familiar to the law since its earliest history.

After the process of attachment became the usual means of enforcing the execution of the award, when made under a rule of court, its advantages could not fail to be perceived, over the tedious and less certain mode of suing upon the award, or the contract of reference.

But this advantage did not consist in any enlarged powers given to the arbitrators, or to any more convenient system of proceeding by them, under the rule of court.

Their powers were exactly defined in all cases, by the language of their appointment, whether that language was found in the rule of court, or in the contract for the submission entered into out of court, and in both cases their proceedings were the same.

The reason is expressly given in the *Statute of* 9 and 10, *Wm. III. ch.* 15, because the parties become thereby obliged to submit to the award, *under the penalty of imprisonment* for their *contempt.*

By this statute, which we hold was received and adopted here, the benefit of the summary and effectual process of attachment to enforce awards, was extended to all cases, in which, by inserting such a provision in the agreement, the submission was made a rule of court, without the usual formalities of a suit.

In the suit pending, the rule of court recites and evidences the consent of parties, and the terms of submission, and is in general, the only evidence of the agreement, which, in such case, need not be in writing.

In the case of a reference under the statute, the consent must be in writing, and proved in the mode prescribed, but in both cases the power and authority of the arbitrators, are

equally dependent on the terms by which they are appointed, and in each case, the court will enforce the award by attachment.

Besides the remedies above noticed the courts had adopted a practice of taking a verdict, by consent, for a nominal sum, larger in amount than the award was expected to be, which, by agreement, was to stand as a security till the award should be returned, when a judgment was entered for the sum found due by the award, and for that reduced amount the ordinary process of execution was issued.

In addition to the cost, and the difficulty of this mode of proceeding, it was confined to such cases as involved the payment of money, it did not avail where the defendant was entitled to recover of the plaintiff, nor could the judgment be for a larger sum than the award. For these reasons it does not appear to have been a proceeding often adopted.

Thus stood the law when the act of 1778, *ch.* 21, passed, by the 8th section of which, the courts were required to give judgment on the award, in any cause instituted, or to be instituted, and to issue execution as they might do upon verdict, confession, or non-suit.

So far as we are informed, the uniform practice under this law has been to institute a suit adversely, or docket an action amicably, and then by a rule of reference name the persons selected as arbitrators, define the subjects intended to be submitted, and limit the time within which the award is to be returned, the notice to be given to the parties, and every other matter connected with their proceedings.

It is not required of us now to say, whether an agreement in *pais*, under the *Statute of William*, and made a rule of reference, as directed by that statute, would be a cause instituted in the court, in which the agreement was made a rule.

We will say, we regard the act of 1778 as a remedial law, designed to facilitate the administration of justice, and entitled to a liberal interpretation.

In the case before us, the cause had been instituted in the usual way by writ, the arbitrators named, and the extent of

their authority defined. The question then as to what were proper subjects of reference, is to be determined by the principles of common law, and not by the *Statute of William*, or the act of 1778. We think the cases referred to in the argument abundantly prove, that all matters of litigation, whether of law or of equity jurisdiction, whether claims for specific articles of property, real, personal, or mixed, or sums of money; whether such claims be by the party, who, in the suit pending, or in the case to be made a rule of court by written agreement, may be plaintiff or defendant, can be the subjects of reference, and when the award is made and returned to court, pursuant to the act of 1778, a judgment thereon is by that act required.

If the award be returned in a common law court, and directs that to be done, which by the ordinary terms of judgment of common law courts may be directed, and to enforce which, therefore, the known executory writs will be the appropriate process, such writs will be issued to execute the judgment.

Thus if the award directs payment of money, the delivering over of the possession of lands, or the restoration of a chattel, the writs of *fieri facias, habro facias possessionem*, or *retorno habendo*, might be an adequate and proper means of enforcing the judgment on that award, and the judgment must be in favour of the party entitled, whether plaintiff or defendant. If the award should direct a matter, for the enforcement of which the usual writs of execution will not avail, such as the execution of an instrument of writing, then, from the necessity of the case, the attachment must be resorted to, as before the act of 1778.

There would seem to be no other means whereby the manifest objects of the statutes can be effected. It is conceded, and cannot be denied that, parties may by mutual bonds of submission select arbitrators, and refer to them any, and all matters of controversy, legal and equitable, of law or of fact, for property, real, personal, or mixed, and that these arbitrators may award finally on all these matters,

either for the one party or the other. To execute such an award, the slow process of suit upon the bond. was to be resorted to, and in that suit, the parties were not in all respects precluded from going into a history of the proceedings of the referees, to show a defect in the award, or an irregularity in the conduct of the referees; and a judgment for damages was finally obtained, instead of a specific performance. The attachment, once confined to the case of the suit pending, was most assuredly extended by the statute of *William*, to all cases where the parties chose to apply to the courts to afford the aid of this process, by making their agreement a rule of court.

The act of 1778, has extended the remedy of execution to all causes instituted, not by means of a previous verdict and judgment, but by requiring judgment to be entered without any preliminary, on all awards, when returned and ratified as by that act is provided, and without lessening the authority of the referees, or limiting the range and extent of their powers, or confining the advantage to the plaintiff on the docket, or to the defendant.

We are therefore of opinion that, the objections taken to the character of the award, and the judgment thereon, cannot avail.

The language of the reference gave to the referees all the authority they have exercised, and it is no just cause of complaint on the part of the appellant, that having submitted all claims against him, as well as for him, the tribunal selected by himself, after examining the whole matter, has decided against him, and that the court has given judgment pursuant to this decision. On this judgment an execution may issue for the sum of money awarded, and an attachment will lie to enforce the execution of the releases.

There are several minor objections to which the attention of the court was called, but we do not think they are tenable.

The act of 1785, *ch.* 80, *sec.* 11, expressly requires that, the case be continued, and the powers of this court are quite competent to give such a judgment as the substantial merits

of the case require, without the unnecessary costs and delay to be incurred by sending it back to have the regular continuances entered, the omission of which, if indeed it be an omission at all, is but a clerical error. As to the alteration of the time within which the award was to be completed, we think the answer given at the bar quite conclusive, that there is nothing to shew the period when the last day was agreed on, or to prohibit the court from concluding it was at the original execution of the agreement to refer.

If however, it appeared on the record, that the parties after the case was referred. by rule of court, had changed the day, by consent fairly expressed, we should hesitate to say that either party could assign as a ground of objection, that the referees had not completed the award within the time first limited.

To do so would make the court tributary to the fraud perpetrated by a party against a solemn contract, deliberately executed under the eye of the court, and with its sanction.

JUDGMENT AFFIRMED.