FREDERICK CONTRACTORS, INC. *v.* BEL
PRE MEDICAL CENTER, INC.

[No. 144, September Term, 1974.]

*Decided March 26, 1975.*

308

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Manuel M. Weinberg*, with whom were *David M. Guggenheim* and *Weinberg, Michel & Stern* on the brief and *Rex L. Sturm*, with whom were *R. Edwin Brown* and *Brown & Sturm* on the brief, for appellant.

*William C. Staley*, with whom were *Staley, Prescott, Ballman& Kane, P.A.* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

In August, 1971, the petitioner, Frederick Contractors, Inc. (Frederick) entered into a contract with the respondent Bel Pre Medical Center, Inc. (Bel Pre), under which Frederick undertook to construct an addition to Bel Pre's nursing home in Silver Spring, Maryland for a stipulated sum of $341,732.00, subject to additions and deductions by change order. The agreement and the general conditions appended to it were on forms A101 and A201, respectively, promulgated in 1967 by the American Institute of Architects (the A.I.A.).

Construction was substantially completed in December, 1972. On 12 January 1973, Frederick's president, J. Bernard Vallandingham, Jr.; Bel Pre's president, Dr. Carsbie C. Adams; Bel Pre's architect, Louis Battistone, and Bel Pre's administrator and head nurse made a tour of the building for the purpose of preparing a "punch list," a copy of which was sent by Battistone to Bel Pre on 16 January with a covering letter which read:

> "We hereby certify that to the best of our knowledge, information and belief, and on the basis of our observation and inspection the Work has been completed in accordance with the terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor, except as noted below is due and payable.
>
> "We have attached herewith a copy of our final

'Punch List' dated 12 January 1973. We feel an equitable sum of $5,000.00 should be withheld from final payment of retainage until this 'Punch List' is complete."

Upon receipt of Battistone's letter, Frederick sent to Bel Pre a requisition for $148,335.00, the unpaid balance of the contract price, less $5,000.00, the amount to be withheld pending completion of the items on the punch list. About 27 January, Mr. Vallandingham met with Dr. Adams a second time. The record does not disclose what happened at this meeting, but it did not result in Frederick's receiving payment.

On 22 March, Frederick recorded a mechanics' lien in the office of the Clerk of the Circuit Court for Montgomery County, and on 30 April, filed in that court a bill of complaint to foreclose the lien. On 24 May, Bel Pre countered with a motion to strike the mechanics' lien, grounded on the contention that the contract between Frederick and Bel Pre compelled arbitration of disputes arising out of the contract, which Bel Pre had demanded. On 8 June, Frederick, in a letter to the American Arbitration Association, sought to protect its right to take part in the selection of arbitrators should it be ordered by the circuit court to participate in the arbitration proceedings.

The motion to strike came on for hearing on 12 June and was denied. Bel Pre answered the complaint, again relying on the arbitration provision of the contract. On 27 June, Frederick sought injunctive relief, contending that Bel Pre had failed to comply in timely fashion with the contract provision requiring that notice be given of intention to submit a controversy to arbitration. After an evidentiary hearing, an order was issued permanently enjoining Frederick and Bel Pre from proceeding with arbitration, and Bel Pre appealed to the Court of Special Appeals.

The Court of Special Appeals, in *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.*, 21 Md. App. 307, 320 A. 2d 558 (1974) vacated the permanent injunction restraining the parties from proceeding in arbitration, and remanded

the case to the Circuit Court for Montgomery County for the entry of an order compelling arbitration and staying further proceedings there. We granted certiorari in order that we might review the decision of the Court of Special Appeals.

Under the terms of the contract, $365,000.00 of a construction loan commitment of $485,000.00 made by United Virginia Bank/First & Citizens National Bank to Bel Pre had been assigned by Bel Pre to Frederick to the end that Frederick would receive progress payments directly from the lender.

The record discloses that late in November, 1972, when Bel Pre was about to enter into permanent financing, Frederick was requested to execute a release of liens, which Frederick's counsel delivered on 1 December, subject to the condition that the proceeds of the permanent financing after payment of the construction loan be held in escrow to be disbursed in accordance with the construction contract. For reasons not apparent to us, this was never accomplished.

On 30 November, Bel Pre borrowed $1,400,000.00 from Metropolitan Federal Savings and Loan Association of Bethesda, a loan secured by a first deed of trust on the medical center.[1] On 18 April 1973, a second deed of trust was executed to secure a loan of $160,000.00 made by Residential Industrial Loan Company.

The provisions of A.I.A. form A201, General Conditions of the Contract for Construction, on which Bel Pre relies, are these:

> "7.10.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in Subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.6, shall be decided

---

1. It appears that the work which Frederick had performed had doubled the size of the center.

by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

"7.10.2 Notice of the demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect. *The demand for arbitration shall be made within the time limits specified in Subparagraphs 2.2.10 and 2.2.11* [infra] *where applicable, and in all other cases within a reasonable time after the claim, dispute or other matter in question has arisen,* and in no event shall it be made after institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations. (Emphasis supplied.)

\* \* \*

"2.2.7 Claims, disputes and other matters in question between the Contractor and the Owner relating to the execution or progress of the Work or the interpretation of the Contract Documents shall be referred initially to the Architect for decision which he will render in writing within a reasonable time.

\* \* \*

"2.2.9 The Architect's decisions in matters relating to artistic effect will be final if consistent with the intent of the Contract Documents.

"2.2.10 Any claim, dispute or other matter that has been referred to the Architect, except those relating to artistic effect as provided in Subparagraph 2.2.9 and except any which have been waived by the making or acceptance of final payment as provided in Subparagraphs 9.7.5 and 9.7.6, shall be subject to arbitration upon the written demand of either party. However, no demand for arbitration of any such claim, dispute or other matter may be made until the earlier of:

.1 the date on which the Architect has rendered his decision, or

.2 the tenth day after the parties have presented their evidence to the Architect or have been given a reasonable opportunity to do so, if the Architect has not rendered his written decision by that date.

"2.2.11 *If a decision of the Architect is made in writing and states that it is final but subject to appeal, no demand for arbitration of a claim, dispute or other matter covered by such decision may be made later than thirty days after the date on which the party making the demand received the decision.* The failure to demand arbitration within said thirty days' period will result in the Architect's decision becoming final and binding upon the Owner and the Contractor. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence but will not supersede any arbitration proceedings except where the decision is acceptable to the parties concerned." (Emphasis supplied.)

Assuming that the rejection of a requisition for payment is arbitrable,[2] we shall have to determine under which

---

2. *See* Lincoln-Sudbury Regional School District v. Frasca Construction Corp., 354 Mass. 22, 234 N.E.2d 759 (1968) where the Supreme Judicial Court: interpreting an A.I.A. form of general conditions in a jurisdiction

section of the conditions arbitration could be sought. Mr. Battistone's letter of 16 January did not come within the ambit of § 2.2.11 because it failed to state that his decision "is final but subject to appeal." As a consequence, it was incapable of being made the subject of what is essentially an appellate procedure which must be commenced within 30 days of the receipt of the decision, see *Sollenberger v. AA Construction Co.*, 481 P. 2d 428 (Colo. Ct. App. 1971).

If demand for arbitration was made by Bel Pre under § 7.10.2, assuming that the time limits contained in § 2.2.10 are clearly inapplicable, relating, as they do, to the earliest, and not the latest, time when the demand may be made, we encounter the mandate of § 7.10.2 that demand must be made within a reasonable time and in no event after the institution of legal or equitable proceedings based on the claim would be barred by the statute of limitations.

If our mechanics' lien law, Maryland Code (1957, 1973 Repl. Vol.) Art. 21, §§ 9-101 to 9-111,[3] has a fault, it is that it works too well. Enacted in 1791 by Chapter 45, § 10 of the Laws of 1791, at the instance of Thomas Jefferson and James Madison, who wished to protect workmen engaged in construction in what is now the District of Columbia, it was unknown at common law and exists by virtue of a Damoclean statutory remedy within the precise ambit of which the claimant must place himself, *Freeform Pools, Inc. v. Strawbridge Home for Boys, Inc.*, 228 Md. 297, 302-03, 179 A. 2d 683, 685-86 (1962). *See generally* Cutler and Shapiro, The Maryland Mechanics' Lien Law — Its Scope and Effect, 28 Md. L. Rev. 225 (1968).

Prior to 1 July 1973, Code, Art. 21, § 9-105 (d) (now Code (1974), Real Property Article § 9-105 (e)) required a notice of lien to be filed by an owner's contractor within six months of the completion of the work, and § 9-106 required a suit to enforce the lien to be brought within two years of the date

which had previously enacted the Uniform Arbitration Act concluded that the refusal to pay a requisition was not the type of dispute which was arbitrable under the contract terms. It would seem that the form used by the parties there differed from that used in this case.

3. Now Maryland Code (1974), Real Property Article §§ 9-101 to 9-111.

the lien was filed.[4] It will be recalled that Frederick filed its lien on 22 March 1973, and commenced its foreclosure action on 30 April. It was not until 22 May that Bel Pre first sought arbitration and then asserted it on 24 May as a defense to the action.

In the final analysis, it is for the courts and not the arbitrators to determine the timeliness of a demand for arbitration, *Sanford Construction Co. v. Rosenblatt*, 25 Ohio Misc. 99, 266 N.E.2d 267 (1970) (reasonable time); *Methodist Church v. Glen-Rich Construction Corp.*, 29 A.D.2d 773, 287 N.Y.S.2d 728 (1968) (reasonable time); *In re Duke Laboratories*, 9 Misc. 2d 779, 168 N.Y.S.2d 998 (1957), *aff'd*, 8 A.D.2d 800, 188 N.Y.S.2d 955 (1959) (time specified in contract); *In re River Brand Rice Mills, Inc. v. Latrobe Brewing Co.*, 305 N. Y. 36, 110 N.E.2d 545 (1953) (time specified in contract).[5] *See generally* cases collected in A.I.A. Building Construction Legal Citator (1973). As was pointed out in *Sanford, supra*, 25 Ohio Misc. at 103, 266 N.E.2d at 270: "Each case . . . must be decided in the light of the language of the particular contract and the equities as they appear to the court." It seems to us that Bel Pre's demand was made within a reasonable time. *See generally* Annot., 25 A.L.R.3d 1171 (1969).

The Court of Special Appeals, in a scholarly opinion, traced the history of arbitration in this country, which culminated in the Uniform Arbitration Act (the Act), enacted by our General Assembly by Chapter 231 of the Laws of 1965, Code (1957, 1968 Repl. Vol.) Art. 7, §§ 1-23.[6]

That court concluded that the question whether a timely demand had been made was itself arbitrable, relying on the decision of the Supreme Court of the United States in *John Wiley & Sons, Inc. v. Livingston*, 376 U. S. 543 (1964), and

---

4. Changed by Chapter 305, Laws of 1973 to one year.

5. We recognize that these jurisdictions have not adopted the Uniform Arbitration Act, but we regard timeliness of the demand as a justiciable issue.

6. The Act was repealed by Chapter 2, § 2 of the Laws of 1973, 1st Special Session, effective 1 January 1974, and reenacted as Code (1974), Courts and Judicial Proceedings Article §§ 3-201 to 3-234, in substantially similar form.

other cases cited in the opinion, decided under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

Because we reach the conclusion that the timeliness of a demand for arbitration is a threshold question, which is, in the first instance, for the courts, and because we are satisfied that Bel Pre's demand was made within the reasonable time stipulated by § 7.10.2 of the General Conditions, we turn to the task of harmonizing the provisions of the Act with the concept of our mechanics' lien law.

As we have already noted, Frederick took timely action to assert its lien, and the critical question is what effect the demand for arbitration had upon the pending action. As early as 1837, this Court held that an attachment would lie to enforce any award which might be made by arbitrators to whom the controversy was to be submitted for determination after the action had been instituted, *Shriver v. State ex rel. Devilbiss*, 9 G. & J. 1 (1837). *See* 2 J. Poe, Pleading and Practice § 164, at 121-22 (5th ed. 1925); Mullen, *Arbitration under Maryland Law*, 2 Md. L. Rev. 326, 334-36 (1938).

The result reached in *Shriver* was posited on two statutes. One was 9 & 10 William III Chapter 15 (1698), 2 J. Alexander, British Statutes in Force in Maryland 615-16 (Coe ed. 1912); *see also Wisner v. Wilhelm*, 48 Md. 1, 12 (1877). The other was Chapter 21 of the Laws of 1778, which the *Shriver* court held to be an extension and amplification of the rights accorded by the statute of William III to secure payment of an arbitration award. While Chapter 21 of the Laws of 1778 ultimately became Code (1957) Art. 75, § 16 and was repealed in 1965 incident to the passage of the Uniform Act, the statute of William III remains viable, since it does not appear among the British statutes which the General Assembly has declared no longer to be in force in Maryland, Code (1974), Real Property Article § 14-115.

As a consequence, we conclude that Bel Pre's demand for arbitration should have had the effect of staying the foreclosure proceeding until an award is returned from the

arbitration, when any award made in Frederick's favor may be enforced by going forward with the proceeding to foreclose the lien, *Sorg v. Crandall,* 233 Ill. 79, 99, 84 N. E. 181, 189 (1908); *see* Annot., 93 A.L.R. 1151, 1152 (1934); Annot., 65 A.L.R. 282, 316 (1930).[7]

Because we have a viable precedent in our case law, we have no hesitancy in holding that while Bel Pre, by demanding arbitration, should have been allowed to stay the proceedings in the circuit court, such a stay will remain effective only until arbitration is concluded or Bel Pre's demand is withdrawn. In such event, an award in Frederick's favor may be enforced or alternatively Frederick's claim may be satisfied by the foreclosure of the lien. While the parties may have bound themselves by the general conditions of the contract to accept the resolution of disputes by arbitration, they in no way limited themselves in the manner by which payment of an award may be enforced, Code (1974), Courts and Judicial Proceedings Article § 3-202; Maryland Rule E 1.

> *Order of the Circuit Court for Montgomery County reversed, case remanded to Court of Special Appeals for remand to the trial court for further proceedings conformable to the views herein expressed.*
> *Costs to abide the result.*

---

7. A similar situation, involving the interplay of arbitration agreements and the mechanics' lien law arose in New York, where resolution was reached by statute in 1929, 32 McKinney's Consol. Laws of N.Y. § 35 (1966). *Compare* In re Young v. Crescent Dev. Co., 240 N. Y. 244, 148 N. E. 510 (1925) and New York Lumber & Wood Working Co. v. Schnieder, 119 N. Y. 475, 24 N. E. 4 (1890) *with* Sommer v. Anthony J. Quarant Contracting, Inc., 40 A.D.2d 95, 337 N.Y.S.2d 957 (1972) and In re Modular Technics Corp. v. Graverne Contracting Corp., 40 A.D.2d 996, 338 N.Y.S.2d 582 (1972), *aff'd,* 32 N.Y.2d 673, 343 N.Y.S.2d 358, 296 N.E.2d 255 (1973), and *see* M. Domke, Commercial Arbitration § 26.04, at 268-70 (1968).