629 A.2d 1330

## WASHINGTON COUNTY EDUCATIONAL CLASSIFIED EMPLOYEES ASSOCIATION

v.

## BOARD OF EDUCATION OF WASHINGTON COUNTY.

No. 1811, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Sept. 3, 1993.

Certiorari Denied Dec. 17, 1993.

398

James R. Whattam (Walter S. Levin, on the brief), Baltimore, for appellant.

Leslie Robert Stellman (Gail D. Allen and Littler, Mendelson, Fastiff & Tichy, on the brief), Baltimore, for appellee.

Argued before BLOOM and WENNER, JJ., and ROSALYN B. BELL *, Judge (Retired) Specially Assigned.

WENNER, Judge.

Appellant, Washington County Educational Classified Employees Association (WCECEA), has appealed from a judgment of the Circuit Court for Washington County in favor of

---

* Bell, J., now retired, participated in the hearing and decision of this case while an active member of this Court; after being recalled pursuant to the Constitution of Maryland, Art. IV, sections 3A and 18(b), she also participated in the adoption of this opinion.

appellee, the Board of Education of Washington County (Board), vacating an arbitration award to which the Board objected. On appeal, WCECEA poses a single question for our review:

> Did the circuit court err in concluding that the Board's unilateral modification of employees' salary step placement was an integral part of the reclassification process, and therefore beyond the scope of lawful negotiation and arbitration under Section 6–408(b) of the Education Article?

Finding no error, we shall affirm the judgment of the circuit court.

## FACTS

WCECEA is the exclusive negotiating agent for classified personnel (unit employees) employed by the Board. As such, WCECEA bargains collectively with the Board on behalf of all unit employees. Among other things, a variety of pay scales, each containing a series of salary grades that are further divided into five experience steps, are collectively bargained. Thus, unit employees are compensated on the basis of their salary grade and their experience step within that grade.

Sometime in 1990, the Board became concerned about the high turnover rate among employees leaving the Board for higher paying positions elsewhere, and authorized a reclassification study. The study was conducted by a private consultant, who concluded that salary rates for classified employees, administrators, and supervisors were unfair and noncompetitive, and recommended that such employees be reclassified.

On June 4, 1991, the Board decided to implement a reclassification plan to cover classified employees. In implementing the plan, a two step process was used for employees who had not reached the top experience step within their current salary grade. Those employees were first placed at the next step of their current grade, and then placed at the step of the next highest grade having the next highest salary.

For the most part, this procedure upgraded unit employees to a higher salary grade, but at a lower experience step. As a result, reclassified employees received an average 4.5% increase in salary. In fact, no unit employee received a reduction in salary.

According to WCECEA, the Board had negotiated away its right to downgrade an employee's step if upgraded during the negotiation of the 1991–92 agreement.[1] Consequently, WCECEA filed a grievance on July 15, 1991, claiming that the procedure utilized in implementing the reclassification plan violated Article 6 of the negotiated agreement.[2]

The dispute was submitted to binding arbitration, and WCECEA asserted throughout the arbitration proceedings that § 6.3(A) guaranteed an automatic annual step elevation, and that reclassification to a higher grade, but at a lower step, violated § 6.3(A). On the other hand, the Board contended that designation of the step within a salary grade was an integral part of the reclassification process and was thus neither negotiable nor arbitrable.

The arbitrator found this process to be procedural and within his jurisdiction. After a hearing, the arbitrator concluded that the Board had violated the agreement negotiated

---

1. In negotiating the 1991–92 agreement, the parties deleted Section 6.3(B) of the 1990–91 contract which provided:

   Upon reclassification upward in the same position an employee may not receive more increase in salary than the amount nearest to two increment steps on the scale from which the employee moved and should be placed on the step in the new classification for that amount or on the step with the amount nearest it.

   The record reflects that the deletion of that provision was mutually agreed upon by the parties in contemplation of and in order to facilitate the reclassification study.

2. Although WCECEA initially failed to identify the specific provision of Article 6 it believed was violated, the record reflects that § 6.3(A) was the specific provision claimed to have been violated. Section 6.3(A) provides:

   Except for employees paid by the hour, an employee who began work prior to January 1, will be placed on the next salary step of the classification and will advance to the next salary step on July 1 of each year and will receive service credit.

by WCECEA in failing to give proper step credit to employees reclassified to higher grades.

The Board then noted an appeal to the circuit court, seeking to have the arbitration award vacated. In vacating the award, the hearing judge determined that

> ... the subject matter of the arbiter's award, that is the reclassification or regrading of the positions, is an integrated reclassification process and I do not believe that it is the subject of negotiation or arbitration. And for that reason it is, I believe, outside the scope of the arbitrator's jurisdiction and was not properly before the arbitrator, and I think for that reason the award must be vacated.

This appeal followed.

### *DISCUSSION*

We begin by observing that since the agreement negotiated by the parties did not expressly provide for the application of the Maryland Uniform Arbitration Act[3], common law principles for vacating an arbitration award governed the circuit court. *Board of Educ. of Prince George's County v. Prince George's County Educators' Assoc., Inc.,* 309 Md. 85, 522 A.2d 931 (1987). At common law, an arbitrator's award could not be vacated unless the arbitrator was determined to have been guilty of fraud, misconduct, or prejudice, had exceeded his or her authority, or had made a mistake of law or fact appearing on the face of the award. *Bel Pre Medical Ctr., Inc. v. Frederick Contractors, Inc.,* 21 Md.App. 307, 320 A.2d 558 (1974), *modified,* 274 Md. 307, 334 A.2d 526 (1975). An arbitrator exceeds his or her authority when the award is based upon a mistaken assertion of jurisdiction or when, although the arbitrator has jurisdiction to consider the disputed subject matter, the arbitrator's award cannot be supported by any rational construction of the substantive contractual agreement. *Snyder v. Berliner Constr. Co., Inc.,* 79 Md.App.

---

**3.** Md.Code (1974, 1989 Repl.Vol.), §§ 3–201, *et seq.,* of the Courts & Judicial Proceedings Article.

29, 555 A.2d 523, *cert. denied,* 316 Md. 550, 560 A.2d 1118 (1989). The hearing judge applied these principles in the case *sub judice,* and concluded that the arbitrator had exceeded his authority. We agree.

■ Section 6–408(b) of the Education Article [4], authorizes the Board to engage in collective bargaining on all matters relating to salaries, wages, hours and other working conditions. Section 6–408(b), however, does not supersede the Board's authority under §§ 4–101 and 4–107(3) to determine and implement educational policy and administer the public schools within Washington County. *Montgomery County Educ. Assoc., Inc. v. Board of Educ. of Montgomery County,* 311 Md. 303, 534 A.2d 980 (1987). Consequently, matters of salaries, wages, hours, and working conditions are negotiable, but matters of educational policy are not. *Id.*

■ Unfortunately, there are few bright lines for distinguishing negotiable issues from non-negotiable issues. As the Court of Appeals observed in *Montgomery County, supra,* using a broad interpretation of § 6–408(b) would mean that virtually everything is negotiable. As might be expected, this is an issue that has provided, and will continue to provide, fertile ground for disagreement and judicial decision making.

So far, the courts have declared a number of issues to be non-negotiable and thus non-arbitrable under § 6–408(b). We held in *Board of Educ. of Carroll County v. Carroll County Educ. Assoc., Inc.,* 53 Md.App. 355, 452 A.2d 1316 (1982), that a local school board may neither negotiate nor delegate its responsibility for determining tenure. The Court of Appeals said in *Board of Educ. of Dorchester County v. Hubbard,* 305 Md. 774, 506 A.2d 625 (1986), that class size and unilateral reclassification of a teacher from a first to second class certificate are neither negotiable nor arbitrable. Of more import to this case, the Court of Appeals said in *Montgomery County, supra,* that the State Board's determination of school

---

4. We hereafter refer to the Education Article of the Md.Code (1978, 1992 Repl.Vol.), unless otherwise noted.

calendars and job reclassification are not negotiable. As we see it, *Montgomery County* is dispositive.

While urging us to reverse the judgment of the circuit court, WCECEA acknowledges *Montgomery County* but attempts to avoid it by suggesting that the Board implemented its reclassification plan in less than good faith.[5] We find nothing whatever in the record to substantiate such an assertion. Nor are we willing to accept the Board's having failed to comply with WCECEA's suggestions of other consulting firms to conduct the reclassification study, or WCECEA's urgings that the study authorized by the Board was intended solely to determine whether certain classified positions belonged to different grade levels in any way shows "bad faith."

Moreover, WCECEA attempts to distinguish *Montgomery County* by reminding us that *Montgomery County* dealt with reclassification of professional, certificated employees rather than classified employees. We see this as a distinction without a difference. In the past, the applicability of § 6–408(b) has been decided without the status of the employees involved being determinative, and we decline to do so now.

As WCECEA correctly points out, in dealing with the question of what matters are negotiable under § 6–408(b), the State Board has drawn a distinction between the procedural and substantive aspects of those matters. *See Brezinski v. Board of Educ. of Howard County*, No. 89–14, June 28, 1989 (power to reassign teacher not negotiable, but reasonable notice of reassignment is negotiable); *Williamson v. Board of*

---

**5.** In analyzing the arbitrability of the matter before him, the arbitrator quoted from *Montgomery County, supra:*

At oral argument counsel for the County Board conceded that the disputed provisions of a collective bargaining agreement would prevent a local board from jettisoning bargained for wage scales under the guise of reclassification. In such a case, an arbitrator could determine whether the local board had undertaken the reclassification in good faith.

*Id.,* 311 Md. at 323, note 8, 534 A.2d 980.

Without even remotely suggesting that the Board had undertaken the reclassification plan in anything other than good faith, the arbitrator concluded that the issue was within his jurisdiction.

*Educ. of Prince George's County,* No. 89–11, June 28, 1989 (right to transfer teachers involuntarily is non-negotiable, but the order in which such transfers are made is procedural and thus negotiable); *Howard County Educational Support Personnel Assoc. v. Board of Educ. of Howard County,* No. 89–32, December 13, 1989 (matters of educational policy including promotion, transfer, and evaluation of noncertified employees is not negotiable, but procedures for promoting, transferring, and evaluating noncertified employees are negotiable). These cases are of little assistance to us in distinguishing between what is procedural and what is substantive. Rather like the court in *Montgomery County,* we feel that if interpreted broadly enough, everything would be "procedural."

While we agree that the issue of when and how step increases are granted would normally be regarded as procedural, when a change in step status is occasioned by a reclassification plan, the matter is no longer procedural. Instead, it becomes part of the substance of the reclassification plan.

In other words, we agree with the hearing judge that the step placement of unit employees was an integral part of the reclassification process.[6] Absent proof of bad-faith, the Board's implementation of its reclassification plan was neither negotiable nor arbitrable. There was no error.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

**6.** We note that appellant has failed to provide a transcript of the proceedings in the circuit court as required by Rule 8–411. It appears from the record that appellant felt it unnecessary to order the entire transcript but ordered only a transcript of the court's ruling. That feeling, however sincerely held, was incorrect as a reading of the rule clearly indicates.