898 A.2d 472

**Leland BRENDSEL, et al.**

v.

**WINCHESTER CONSTRUCTION COMPANY, INC.**

**No. 66, Sept. Term, 2005.**

Court of Appeals of Maryland.

May 10, 2006.

Lawrence S. Greenwald (Lawrence P. Fletcher-Hill and Catherine A. Bledsoe of Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore), on brief, for petitioners.

Robert M. Wright (William P. Pearce of Whiteford, Taylor & Preston, Baltimore), on brief, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

WILNER, J.

We shall resolve here the dilemma faced by a contractor who (1) is operating under a construction contract that requires disputes arising out of or relating to the contract to be submitted to binding arbitration, but (2) also may be entitled to a mechanics' lien, pursuant to Maryland Code, title 9, subtitle 1 of the Real Property Article (RP), for work done or materials furnished under the contract. Can the contractor seek to assure the prospect of ultimate payment by obtaining a provisional interlocutory lien on the property without giving up its contractual right to have the merits of its claim determined through arbitration? We shall conclude that the contractor does not waive its right to compel arbitration of an arbitrable dispute merely by seeking and obtaining an interlocutory mechanics' lien.

## BACKGROUND

In November, 1999, respondent Winchester Construction Company and petitioner Diane Brendsel entered into a con-

tract for the renovation of Wye Hall, a historic plantation house in Queen Anne's County owned by Ms. Brendsel and her husband Leland.[1] The contract was a "cost of the work plus a fee" contract; it called for Winchester to be reimbursed for the costs necessarily incurred in the proper performance of the work and to receive a contractor's fee of 10% of that cost for overhead and an additional 10% for profit. The contract was a standard Abbreviated Form of Agreement Between Owner and Contractor, coupled with attached General Conditions, drafted by the American Institute of Architects (AIA Document A117 (1987 Ed.)). Among other things, the contract specified those costs which would be reimbursed and those which would ˜t, required Winchester to keep detailed accounting records, and provided for progress payments and final payment.

Article 15 of the General Conditions dealt with administration of the contract. It authorized the architect, as the owner's representative, to review and certify amounts due to the contractor, interpret and decide matters concerning performance, make initial decisions on all claims, disputes, or other matters in question, reject work that did not conform to the contract documents, and review and take action on submittals by the contractor. Although the contract identified Good Architecture as the architect, it appears that, at some point, the Brendsels also employed Gipe Associates, Inc., consulting engineers, as an additional owner's agent.

Section 15.8 of the General Conditions called for all claims or disputes between the contractor and the owner arising out of or relating to the contract documents or the breach thereof to be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association (AAA) currently in effect, unless the parties agreed otherwise, subject to initial presentation of the claim or dispute to the architect. The provision required that notice of a demand for arbitration be filed with the other party and

---

1. Leland did not sign the contract, although Winchester later claimed that he ratified it. That is not an issue in this appeal.

with the AAA "within a reasonable time after the dispute has arisen."

The renovation work proceeded from September, 1999 through June 3, 2003. On August 1, 2002, Winchester and Ms. Brendsel signed a Memorandum of Understanding (MOU) that made a number of changes in the contract. Most of the MOU dealt with procedures respecting applications for payment. In that regard, ¶ 6 provided:

"Prior to making the final payment under the Contract, Winchester will submit its final accounting of all costs and fee charged to Brendsel under the Contract so that Brendsel's accountants can review the information. This review will be made in 45 days, and Brendsel will pay either the requested amount or the lesser amount substantiated by the accountants within seven days after the accountants' review. If Winchester disagrees with the amount that Brendsel has paid, the matter can be resolved by negotiation or arbitration."

Paragraph 9 deleted ¶¶ 15.1 through 15.7 of the General Conditions, dealing with the duties of the architect, to reflect the fact that the architect had not, in fact, been involved in contract administration. That role, apparently, had been assumed by Gipe Associates. Paragraph 12 of the MOU permitted Brendsel to terminate the contract at any time for her convenience and without cause but specified that, upon such termination, Winchester would be paid for work done to the date of termination subject to appropriate offsets.

The MOU expressed the intent of the parties to execute a formal amendment to the contract reflecting the terms of the MOU and charged Ms. Brendsel with preparing such an agreement. It does not appear that any such agreement was ever prepared or signed. Both sides have treated the MOU as an effective agreement, however.

Disputes continued to surface. On January 28, 2003, an agreement was reached with respect to pending claims. Winchester was advised that Gipe had been designated as construction manager and owner's agent on the project. The

parties agreed that Winchester's fee would be reduced from 20% (10% overhead and 10% profit) to 10%, and that the retainage would be reduced from 10% to 5%.

On May 23, 2003, Ms. Brendsel terminated the agreement and directed Winchester to remove its personnel and equipment from the jobsite by May 30. Winchester regarded the termination as one for convenience pursuant to ¶ 12 of the MOU. In her brief, Ms. Brendsel notes that the term "convenience" does not appear in the letter of termination, which is true, but she does not contend that the termination was for any other reason. The letter stated that payment of a final invoice would be made after review of the final accounting, as provided by ¶ 6 of the MOU.

Winchester submitted applications for payment in June and July and a final application on August 13, 2003, showing a gross balance due of $815,877. Brendsel's initial response was to obtain new counsel who, in September, wrote to counsel for Winchester asking for certain additional information and documents and suggesting a meeting to resolve any matters in dispute. At that point, it was not clear that there *was* any dispute; counsel was collecting information and presumably Brendsel's accountants were reviewing the pending applications for payment. In his letter of September 30, 2003, counsel enclosed a Tolling Agreement that tolled and suspended "[a]ll deadlines provided in either the Agreement or the MOU, as well as any statutory or common law limitation and common law laches ... until five (5) business days after written notice of either party's withdrawal from this Tolling Agreement is delivered to the other party." Through counsel, Winchester signed the Tolling Agreement.

RP § 9–105 requires that a petition to establish a mechanics' lien be filed within 180 days "after the work has been finished or the materials furnished." The work was completed, at the latest, by June 3, 2003. Discussions continued throughout the Fall of 2003, without resulting in either an acceptance of Winchester's claim and payment or a rejection of the claim. Concerned that the statutory time for filing a

petition for mechanics' lien was (1) getting close, and (2) might be regarded as jurisdictional or preclusive in nature, rather than as a mere statute of limitations that could be waived or tolled by agreement of the parties, counsel for Winchester, on November 14, 2003, filed a petition in the Circuit Court for Queen Anne's County to establish a mechanic's lien. The petition alleged that Winchester furnished work, labor, and materials from September, 1999, through June 3, 2003, and that $815,877 remained due and payable.

Winchester obviously regarded the petition as a protective measure; counsel continued to send both provisional lien releases and additional documents to counsel for Brendsel, and negotiations continued. At that point, Brendsel was still seeking additional information and it was as yet unclear whether, or to what extent, the application for final payment would ultimately be rejected. Not until December 10, 2003, did Brendsel, through a letter from counsel, reject in full Winchester's claim. The letter acknowledged a net balance owing under the contract of $604,565 but claimed credits against that balance of $871,872 for overcharges and construction defects, leaving a net balance due to Brendsel. Rather than "initiating an action on behalf of Ms. Brendsel," however, counsel suggested a meeting to resolve the matter. Counsel for Winchester responded, questioning some assertions, denying others, and indicating that he needed more time to respond in full.

In the meanwhile, on December 11, the court filed a memorandum requesting that Winchester supplement its petition with, or explain the absence of, an allegation that the improvement of Brendsel's property represented at least 15% of the value of the property and that it furnish statements of the nature and kind of work done or materials provided. Where the work involves improvements to a building (as opposed to the erection of a new building), RP § 9–102 permits a mechanics' lien only if the building is improved to the extent of 15% of its value, and RP § 9–105(a) and Md. Rule 12–302(b) require the petition to allege the kind of work done or the kind and amount of materials furnished.

Faced with the court's request and Brendsel's clear rejection of Winchester's claim, Winchester, on January 9, 2004, filed an amended petition to establish and enforce a mechanics' lien. The amended petition added the averments requested by the court, and, in addition to requesting the establishment of a lien, asked for "a stay of proceedings after an interlocutory lien is established pending the outcome of an arbitration proceeding between the parties hereto." On January 30, the court directed Brendsel to show cause on or before March 8, why a lien should not be granted.

Brendsel responded with an answer denying that any amount was due to Winchester and a two-count counterclaim seeking damages of "at least $1,000,000." Tracking the allegations in her December 10 letter, Brendsel claimed both overcharging and defective work on Winchester's part.

Neither the amended complaint nor the counterclaim sufficed to terminate discussions and negotiations between counsel. Letters were exchanged, and, on February 11, 2004, counsel met. On March 5, contemporaneously with Brendsel's answer and counterclaim, the parties filed a consent motion to postpone the scheduled hearing on Winchester's request for an interlocutory mechanics' lien. The motion noted that, with the ability to conduct some limited discovery, planned to be completed by June 15, 2004, certain issues regarding charges for work done by subcontractors might be resolved. Brendsel agreed not to object to an interlocutory lien being established in the amount of $815,877 during the discovery period, and the parties expressly agreed "that neither this Consent Motion nor their activities during the Discovery Period, nor the issuance of the interlocutory lien order proposed hereunder, shall prohibit or waive any party's right to proceed in arbitration, or to object thereto, to the same extent as if this Motion had not been filed and the actions proposed hereunder had not been taken."

Upon that consent motion, the court, on March 8, 2004, entered an interlocutory mechanics' lien in favor of Winchester in the amount of $815,877 and declared that neither the

consent motion, discovery conducted during the discovery period, nor that order would prohibit or waive the right of any party to proceed in arbitration, or object thereto. The same day, Brendsel filed an amended answer and counterclaim. Winchester answered the counterclaim, asserting among other defenses, that the counterclaim was subject to arbitration.

During the discovery period allowed in the consent motion and order, Brendsel took the deposition of two subcontractors but conducted no other discovery. It does not appear that Winchester conducted any discovery. On June 16, 2004—the day after the discovery period ended—Brendsel filed a motion for partial summary judgment as to liability under her counterclaim for over-charging. Winchester responded with a petition to compel arbitration and stay all further judicial proceedings, contending that, through its motion for partial summary judgment, Brendsel was seeing a ruling on the merits of its counterclaim, which was subject to arbitration. On July 6, Brendsel filed an opposition to the petition to compel arbitration, averring that Winchester had waived its right to arbitration by seeking a mechanics' lien and failing to provide written notice of a demand for arbitration within a reasonable time after the dispute had arisen.

Following a hearing two weeks later, the court granted the petition to compel arbitration, ruling that, under the totality of the circumstances, Winchester had not waived its right to arbitration. The order compelled arbitration of "all the disputes between [the parties] in connection with this Mechanics' Lien action including the Counter–Claim filed herein" and stayed all proceedings in the matter "pending the outcome of the arbitration proceeding." Brendsel noted an appeal, the Court of Special Appeals affirmed the judgment (*Brendsel v. Winchester*, 162 Md.App. 558, 875 A.2d 789 (2005)), and we granted *certiorari* to consider the issue noted. We shall affirm.

## DISCUSSION

There is no dispute that ¶ 15.8 of the General Conditions created a valid agreement to submit the claims made by

both Winchester and Brendsel to arbitration, and that such an agreement is enforceable under both the Federal Arbitration Act (U.S.Code, title 9) and the Maryland Uniform Arbitration Act (Maryland Code, title 3, subtitle 2 of the Cts. & Jud. Proc. Article) (CJP). Because there is no significant difference between the two statutes relevant to this case, we shall, for convenience, apply the State law. CJP, § 3–207 provides that, if a party to an enforceable arbitration agreement refuses to arbitrate, the other party may file a petition in a circuit court to order arbitration. If the opposing party denies the existence of an arbitration agreement, the court shall proceed expeditiously to determine if the agreement exists, and if the court finds that the agreement *does* exist, "it shall order arbitration." Section 3–209 requires further that a court stay any action or proceeding involving an issue subject to arbitration if a petition or order to arbitrate has been filed. If the issue subject to arbitration is severable, the court may order the stay with respect only to that issue.

The only defense to Winchester's petition to compel arbitration offered to this Court is that, by seeking an interlocutory mechanics' lien and answering Brendsel's counterclaim, Winchester waived its right to arbitrate the dispute arising from the contract documents. Brendsel asks us to adopt a *per se* rule that the mere seeking of an interlocutory lien constitutes a waiver of arbitration without regard to any other fact or circumstance and without regard to Winchester's actual intent. Along with most courts that have been so importuned, we shall decline that request.

We have long recognized that, because the right to arbitration pursuant to the Federal or Uniform Arbitration Act arises from contract, it may be waived like most other contractual rights. We have also made clear, however, specifically with respect to waiver of a contractual right to arbitrate disputes, that waiver "involves a matter of intent that ordinarily turns on the factual circumstances of each case" and that the intention to waive "must be clearly established and will not be inferred from equivocal acts or language." *Gold Coast Mall v. Larmar Corp.*, 298 Md. 96, 109, 468 A.2d 91, 98 (1983); *Chas.*

*J. Frank, Inc. v. Assoc. Jewish Ch.,* 294 Md. 443, 449, 450 A.2d 1304, 1306–07 (1982). *See also Questar v. Pillar,* 388 Md. 675, 687, 882 A.2d 288, 294–95 (2005); *Canaras v. Lift Truck Services, Inc.,* 272 Md. 337, 360–61, 322 A.2d 866, 878–79 (1974); *BarGale Indus. v. Robert Realty,* 275 Md. 638, 643–44, 343 A.2d 529, 533 (1975).

We have not previously dealt directly with the precise issue now before us, although in *Frederick Contr. v. Bel Pre Med.,* 274 Md. 307, 334 A.2d 526 (1975) and *Walther v. Sovereign Bank,* 386 Md. 412, 872 A.2d 735 (2005), we made pronouncements that clearly lead to our holding here. In *Frederick Contr.,* we held that an owner did not waive its right to arbitrate a contractor's claim against it by failing to demand arbitration prior to the contractor, under an earlier version of our mechanics' lien law, obtaining a provisional mechanics' lien. We concluded that the demand was timely and that further judicial proceedings to foreclose the lien were to be stayed pending the arbitration.[2]

---

**2.** The general issue of whether, and to what degree, participation as a party in a judicial proceeding might constitute a waiver of arbitration arose, obliquely, in *Chas. J. Frank, supra,* but did not need to be addressed. The case involved a contract between an owner and a contractor and a contract between the contractor and a subcontractor, both of which contained an arbitration clause. The subcontractor sued the contractor to recover for extra work on one discrete aspect of the work, and the contractor filed a third party claim against the owner, essentially for indemnity. The owner pled to the third party claim. No one sought arbitration, and eventually the case was settled. Later, the contractor demanded the balance due under the general contract, and, when the owner refused to pay, claiming faulty construction work that had nothing to do with the work at issue in the earlier action by the subcontractor, the contractor filed a demand for arbitration. The owner then filed an action in court to stay the arbitration, claiming that, by participating in the suit by the subcontractor, the contractor had waived its right to arbitration.

In a footnote, we observed that some courts had held that the mere filing of a complaint or answer in court constitutes a waiver of arbitration, while others had held that some greater degree of participation in the judicial proceeding is required for waiver. We found it unnecessary to address that issue, however, holding only that, while participation to the end in litigation with the subcontractor would constitute a waiver of arbitration of the issues raised in that case, such participation was not inconsistent with an intention to enforce the right to arbitrate other

In *Walther,* second mortgage borrowers filed a class action lawsuit against their mortgagor claiming violations of Maryland's Secondary Mortgage Loan Law. The mortgage contained an arbitration clause, and the mortgagor's assignee filed a petition to compel arbitration and to dismiss the class action suit. The defendant averred as well that, in a disclosure agreement, the plaintiffs had waived their right to a class action suit and a jury trial. In response, the plaintiffs claimed, among other things, that, by raising the waiver issues, the defendant had sought a ruling on the merits and had thereby waived its right to arbitration. The Circuit Court rejected that defense and entered an order compelling arbitration, which we affirmed. In doing so, we observed:

> "[T]he circuit court's ... order included no final judgment on any issue that might be subject to arbitration. Thus, Sovereign Bank attained no determination on any of the issues in dispute. Sovereign Bank's actions did not constitute a repudiation of the Disclosure Agreement's arbitration provision but, in light of the fact that petitioners seemed intent to avoid arbitration, rather amount to a continued *affirmative* step in further pursuit of an adjudication by arbitration of the parties' dispute. Accordingly, the results of Sovereign Bank's petition was neither a waiver of the right to arbitration nor of any of the issues that might be subject to arbitration."

---

issues arising from the contract and did not constitute a waiver as to them. The principle that participation in litigation to the point of trial on the merits will constitute a waiver of arbitration was confirmed in *NSC v. Borders,* 317 Md. 394, 564 A.2d 408 (1989). *See also RTKL v. Four Villages,* 95 Md.App. 135, 620 A.2d 351 (1993), *cert. denied,* 331 Md. 87, 626 A.2d 371 (1993) (defendants waived arbitration by filing cross claims, participating in discovery, and waiting five years to demand arbitration); *Commonwealth Equity v. Messick,* 152 Md.App. 381, 398–99, 831 A.2d 1144, 1154 (2003), *cert. denied,* 378 Md. 614, 837 A.2d 926 (2003) (defendants waived arbitration by filing answers, participating in discovery, and waiting until eve of trial to petition for arbitration); *Gladwynne Const. v. Baltimore,* 147 Md.App. 149, 807 A.2d 1141 (2002); compare *Redemptorists v. Coulthard,* 145 Md.App. 116, 801 A.2d 1104 (2002) (mere filing of motion to dismiss for lack of jurisdiction not a waiver of arbitration).

*Id.* at 449, 872 A.2d at 757. We anticipated in *Walther* one aspect of the issue now before us—whether "where (1) one party to an agreement containing a valid arbitration clause reserves the right to seek a judicial remedy that only a court can provide, such as foreclosure or a mechanics' lien, (2) the party opts for that remedy, (3) a contract defense is asserted by the other party to liability, and (4) that party demands arbitration of the dispute, the court, on motion and pursuant to §§ 3–207 and 3–209 of the Courts and Judicial Proceedings Article or the counterpart provisions in the Federal Arbitration Act, would be required to stay the judicial proceedings and direct that dispute to be resolved in arbitration." *Id.* at 449–50, n. 13, 872 A.2d at 757–58, n. 13. We found it unnecessary to resolve that issue in *Walther.*

To implement our general view that an intention to waive arbitration is not to be inferred from ambiguous conduct, but must be clear and unequivocal, we need to examine the nature and role of mechanics' liens and the manner in which they may be obtained. Until our decision in *Barry Properties v. Fick Bros.*, 277 Md. 15, 353 A.2d 222 (1976), a mechanics' lien was created and attached to the property automatically, as soon as work was performed or materials were supplied, and it lasted, even without the filing of a claim, until the expiration of 180 days after the work was finished or the materials were furnished. *Id.* at 19, 353 A.2d at 225–26; *see* also RP (1974) § 9–105(e). To maintain the lien thereafter, the contractor had to file a claim with the clerk of the Circuit Court, who would then list the claim on a special mechanics' lien docket. RP § 9–105(a) and (b). The extended lien would expire one year from the date the claim was filed unless, during that period, either the claimant sued to enforce it or the owner or other interested person sued to compel the claimant to prove its validity. RP § 9–106. It was in that proceeding that the court would determine the validity of the claim, if it was contested.

That was the legal construct when *Frederick Contr. v. Bel Pre Med.*, *supra*, was decided. In that case, the contractor filed its claim and promptly filed a complaint to enforce it,

thereby triggering the adjudicatory proceeding. The owner's demand for arbitration, filed after the complaint to enforce the lien but before any proceeding on that complaint, was held not to be waived because it was not filed prior to the contractor's complaint to enforce its lien.

In *Barry Properties*, based on four then-recent Supreme Court decisions striking down on due process grounds laws that allowed the imposition of a lien against property without an opportunity for a prior hearing, we held that the existing mechanics' lien law was unconstitutional. We concluded that, because the law allowed prejudgment seizures without notice, a prior hearing, or other sufficient safeguards, it was incompatible with the due process clauses of the Fourteenth Amendment and what is now Art. 24 of the Md. Declaration of Rights.

The Legislature responded immediately by revising the law to provide a bifurcated approach that satisfied the Court's due process concern but did not require full litigation of a contractor's claim in order to obtain a provisional lien. No longer does a lien arise automatically from the doing of the work or provision of materials, without notice or opportunity for a hearing, but a contractor can obtain an *interlocutory* lien without having to litigate in full the merits of its claim. To obtain a lien, the contractor must file a petition in the Circuit Court within 180 days after the work was finished or the materials furnished. RP § 9–105. If, from the petition and any exhibits attached to it, the court concludes that there is a reasonable ground for the lien to attach, it enters an order directing the owner to file an answer showing cause why the lien should not attach, and setting a date for a hearing. That is what the court did in this case. Based on the owner's response (or failure to respond), RP § 9–106 and Md. Rule 12–304 give the court three options:

(1) if the evidence before the court shows that there is no genuine dispute of material fact and that a lien should attach

as a matter of law, it shall enter a final order establishing the lien in the amount not in dispute; [3]

(2) if the evidence shows that there is no genuine dispute of material fact and that the petitioner has failed as a matter of law to establish its right to a lien, it shall enter a final order denying the lien;

(3) if the court determines that the lien should not attach (or not attach in the amount claimed) as a matter of law but that there is probable cause to believe that the petitioner is entitled to a lien, the court shall enter an interlocutory order that (i) establishes the lien, (ii) describes the boundaries of the land and buildings to which it attaches, (iii) states the amount of the claim for which probable cause is found, (iv) specifies the amount of bond that the owner may file to have the lien released, (v) may require the claimant to file a bond and, if so, sets the amount, and (vi) assigns a date for trial of all matters at issue in the action.

 This construct can create the basis for a waiver. If, pursuant to a contractor's petition and an owner's response, neither side seeking to have the matter resolved by arbitration, the court proceeds to determine as a matter of law either that the contractor *is* entitled to a final lien or that it is *not* entitled to a lien, both sides would be bound by that determination and could not later complain that there was an arbitrable dispute. Similarly if, in lieu of ruling one way or the other as a matter of law, the court sets the matter for trial and the parties proceed with trial or with significant preparation for trial, they would be deemed to have waived any right to arbitration and would be bound by the ultimate judicial determination. When the parties and the court do not proceed to that point, however, and the contractor makes clear that it is merely seeking an interlocutory lien and desires to have any dispute as to the merits of the claim reserved for resolution

---

**3.** If it appears that there is no genuine dispute as to a portion of the claim, the court enters the lien for that portion and the action proceeds on the disputed amount.

through arbitration, it does not, through that limited action alone, waive its right to arbitration. In that situation, which is the one now before us, the court is not being asked to resolve the merits of the claim. An interlocutory lien is imposed only when there *are* issues of fact in dispute that cannot and *are* not resolved at that stage of the proceeding.

Viewed in that context, an interlocutory mechanics' lien is in the nature of a provisional remedy, not much different than an interlocutory injunction or attachment sought to maintain the status quo so that the arbitration proceeding can have meaning and relevance, and the predominant view throughout the country is that the availability of such remedies by a court is permitted by the Federal and Uniform Arbitration Acts and is not inconsistent with the right to enforce an arbitration agreement. *See Salvucci v. Sheehan,* 349 Mass. 659, 212 N.E.2d 243 (1965); *Teradyne Inc. v. Mostek Corp.,* 797 F.2d 43 (1st Cir.1986); *Blumenthal v. Merrill Lynch,* 910 F.2d 1049 (2nd Cir.1990); *Merrill Lynch, Pierce, Fenner & Smith v. Bradley,* 756 F.2d 1048 (4th Cir.1985); *RGI, Inc. v. Tucker & Associates, Inc.,* 858 F.2d 227 (5th Cir.1988); *Merrill Lynch, Pierce, Fenner & Smith v. Salvano,* 999 F.2d 211 (7th Cir. 1993); *Merrill Lynch, Pierce, Fenner & Smith v. Dutton,* 844 F.2d 726 (10th Cir.1988).

The focus of those cases was on preserving the *status quo*—preventing one party from taking some action that could effectively frustrate the arbitration proceeding. That is the focus here as well.[4] Often, the only security that a contractor

---

4. The balance of considerations is even more delicate when a temporary restraining order or interlocutory injunction is sought, because the court, in order to grant such relief, must ordinarily find a likelihood of success on the merits, which *does* require some tentative ruling on the ultimate issues. *See LeJeune v. Coin Acceptors, Inc.,* 381 Md. 288, 300–01, 849 A.2d 451, 458–59 (2004); *Fogle v. H & G Restaurant, Inc.,* 337 Md. 441, 455–56, 654 A.2d 449, 456 (1995). That has not served to preclude such interim and provisional relief, however. In imposing an interlocutory mechanics' lien, the court does not have to go quite that far, but only to determine that the issue cannot be resolved, one way or the other, as a matter of law and that there *is* probable cause to believe

has for enforcing an arbitral award and collecting what the arbitrator declares is owed is the mechanics' lien. As the Court of Special Appeals pointed out in *Caretti, Inc. v. Colonnade Ltd.*, 104 Md.App. 131, 137, 655 A.2d 64, 67 (1995), *cert. denied*, 339 Md. 641, 664 A.2d 885 (1995), "to defer consideration of even an interlocutory order establishing a lien could . . . leave the claimant unprotected for a considerable period of time." Other creditors can easily jump in with judgments or other liens that would achieve priority over any lien that the claimant may ultimately obtain and leave the claimant out in the cold.[5] For a classic example of that, *see Residential Indus. Loan Co. v. Weinberg*, 279 Md. 483, 369 A.2d 563 (1977). The *Caretti* court found no impediment to the court's "proceeding under Real Prop. art., § 9–106(b)(3) to hold a probable cause hearing, upon a finding of probable cause— which is far less than adjudicating the merits of the dispute— from establishing an interlocutory lien, and then staying trial on the merits in favor of arbitration." *Id.* at 138, 655 A.2d at 67.

That appears to be the general view, and, indeed, a contrary view would be inconsistent with the legislative direction in RP § 9–112 that the mechanics' lien law "is remedial and shall be construed to give effect to its purpose." In *Newman v.*

---

that the petitioner is entitled to a lien. Probable cause is a lesser standard than likelihood of success.

**5.** The dilemma presented by Brendsel's approach goes beyond the mere happenstance of other creditors fortuitously obtaining priority. If a contractor is unable even to file a petition for mechanics' lien without losing its agreed-upon right to arbitrate the dispute and is left solely to filing a demand with an arbitration organization or other chosen arbitrator, that non-judicial demand may not serve as *lis pendens* or otherwise give constructive notice of the dispute, and thus would permit the owner to alienate the property or deliberately place all sorts of encumbrances on it in order to render the contractor's claim worthless. That would hardly be consistent with the long-held view of this and nearly every other court that arbitration is a "favored" form of dispute resolution. *Questar v. Pillar, supra*, 388 Md. at 684, 882 A.2d at 293, and cases cited there. Contractors would likely be reluctant, indeed, to opt for arbitration—an especially favored remedy in the construction industry—if they knew that, by doing so, they would be relinquishing their right to seek a mechanics' lien.

*Valleywood Associates, Inc.,* 874 A.2d 1286 (R.I.2005), the Rhode Island court, citing *Caretti* in its discussion, held flatly that "a party does not waive its right to arbitrate a contractual dispute, as a matter of law, by filing a notice of intention to claim a mechanic's lien" and that "a party may proceed to arbitration after first encumbering the subject real estate with a mechanic's lien." *Id.* at 1290. The court pointed out that in Rhode Island, as in Maryland, waiver of arbitration is to be determined by the facts of the case, and, to hold that the mere filing of a claim for mechanics' lien constitutes an automatic waiver would be inconsistent with that approach. *See also La Hood v. Central Illinois Const. Inc.,* 335 Ill.App.3d 363, 269 Ill.Dec. 788, 781 N.E.2d 585 (2002); *H.R.H. Prince, Ltc. v. Batson–Cook Co.,* 161 Ga.App. 219, 291 S.E.2d 249 (Ga.App. 1982); *EFC Develop. Corp. v. F.F. Baugh Plumbing & H., Inc.,* 24 Ariz.App. 566, 540 P.2d 185 (1975). In one State where the court reached a different conclusion, the Legislature promptly overruled the decision by statute. *See Young v. Crescent Development Co.,* 240 N.Y. 244, 148 N.E. 510 (1925) and *Askovitz v. Gabay,* 229 A.D. 258, 241 N.Y.S. 394 (1930).

The general rule is well-stated in Maurice T. Brunner, *Filing of Mechanic's Lien or Proceeding for its Enforcement as Affecting Right to Arbitration,* 73 A.L.R.3d 1066 (1976). The annotator points out that, while acts "inconsistent with an agreement to submit a controversy to arbitration may constitute a repudiation, a breach, or waiver of the right to arbitrate," waiver "is usually a question of fact dependent upon the intention of the party claimed to have waived his right." *Id.* at 1068. That is the established Maryland view. Thus, he continues, "[i]t has been held that the mere filing of a mechanic's lien does not in itself constitute a waiver or abandonment of rights under an arbitration clause in a construction contract unless the lienor manifests an intent to waive or abandon his rights, and the existence of such an intent depends upon the particular facts of a given case." *Id.*

The record in this case not only supports the Circuit Court's conclusion that there was no intent to waive arbitration on Winchester's part but comes close to making any contrary

finding one that would be clearly erroneous. Winchester filed its initial petition out of concern that failure to do so within the statutory time requirement might be regarded as preclusive, notwithstanding the Tolling Agreement. This Court has not ruled on that issue, but there is language in some of our older cases, construing the earlier version of the mechanics' lien law, that could justify that concern. Winchester made no effort to have the merits of its claim resolved by the court, but instead continued to negotiate with Brendsel in an effort to resolve any as-yet-undeclared disputes amicably. As noted, Brendsel never responded to the initial petition, which remained dormant. When the court insisted on a supplement to the petition, contemporaneously with Brendsel finally rejecting Winchester's applications for payment and thereby creating for the first time a dispute ripe for adjudication, Winchester amended its petition to make clear that it wanted only an interlocutory lien and to ask specifically that the court stay any further proceedings on the claim in favor of arbitration. It iterated its demand for arbitration in response to Brendsel's motion for summary judgment.

Nothing in this record indicates an intent on Winchester's part to waive arbitration. All of its actions show the contrary. The arbitration clause, § 15.8 of the General Conditions, requires that the arbitration be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, Rule 49(a) of which provides that "[n]o judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate."[6] The consent motion itself, signed *after* the amended petition was filed, makes clear that the delay and the limited discovery insisted upon by Brendsel were *not* intended

---

**6.** Brendsel contends that Rule 49 does not apply to judicial proceedings instituted prior to the commencement of arbitration. The Rule is not at all clear in that regard, and, whether or not an arbitrator might construe it as Brendsel suggests, it would not be unreasonable for Winchester to construe it otherwise and therefore assume that the arbitration clause itself permits a protective petition seeking an interlocutory mechanic's lien. That would certainly be relevant on the issue of its actual intent.

to waive Winchester's right to have the dispute submitted to arbitration. Filing an answer to Brendsel's counterclaim in order to forestall the prospect of an order of default being entered on it hardly suffices to overcome Winchester's consistent demand that the dispute be arbitrated in conformance with the contract.

The simple fact is that there is nothing inconsistent between the mere seeking of the protection of an interlocutory mechanics' lien or taking routine and appropriate action to preclude an order of default and an intent on Winchester's part to require that any dispute over the competing claims be submitted to arbitration. It is not an "either/or" situation. The granting of the interlocutory lien, *without opposition by Brendsel,* did not resolve the dispute. Adjudication of the merits of Winchester's claim through arbitration was in no way compromised by the interlocutory lien. The parties agreed in their contract that all disputes arising from the contract documents were to be adjudicated by an arbitrator. That is what Winchester demanded, and that is what the court was obliged by both Federal and State law to implement and enforce.

### JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.

BELL, C.J., dissents.

Dissenting Opinion by BELL, C.J.

I disagree with the majority. The appellants, Leland C. Brendsel and his wife, B. Diane Brendsel, entered into a contract with the appellee, Winchester Construction Company, Inc., pursuant to which the appellee, as "Contractor," undertook the renovation of an historic plantation house, which the appellants owned. In that contract, the parties agreed how, and in what forum, disputes between them with respect to the contract would be handled. Pertinent in that regard, Section 15.8 of the General Conditions of the contract provides:

> "All claims or disputes between the Contractor and the Owner arising out of or relating to the Contract documents,

or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise and subject to an initial presentation of the claim or dispute to the Architect as required under paragraph 15.5."

As that provision evidences, the parties agreed that the preferred, and indeed, exclusive, dispute resolution method was arbitration. *See Crown Oil and Wax Co. of Delaware, Inc. v. Glen Const. Co. of Virginia, Inc.*, 320 Md. 546, 578 A.2d 1184 (1990) (holding that the intention of the parties controls on whether there is an agreement to arbitrate, but, where the parties use a broad, all encompassing clause, it is presumed that they intended all matters to be arbitrated). The contract makes no exceptions to this preference, not even for provisional or ancillary remedies, the purpose of which, ostensibly, are to preserve the status quo in order to avoid the undermining of the parties' preference, to insure, in short, that arbitration will be able to be used meaningfully.[1]

Subject to the execution of the contract, a dispute developed regarding the proper amount of fees and overhead costs to be paid to Winchester. Rather than pursuing arbitration, as the contract required, Winchester filed an action in the Circuit

---

1. In this respect, therefore, this case differs drastically from *Walther v. Sovereign Bank*, 386 Md. 412, 872 A.2d 735 (2005), on which, as we shall see, *infra*, the majority relies. 392 Md. 601, 610–14, 898 A.2d 472, 477–79 (2006). In that case, recognizing that certain remedies, *i.e.* injunctions, liens, receiverships, etc., are available only in a court proceeding and that they may be useful, and therefore resort to them is desirable, in certain circumstances, the Bank quite deliberately, and expressly, hedged its bet with respect to the dispute resolution choice, opting to except, in addition to foreclosures and self-help remedies, "provisional or ancillary remedies with regard to such securities, including without limitation, injunctive relief, sequestration, attachment, garnishment, or the appointment of a receiver from a Court having competent jurisdiction before, during or after the pendency of any arbitration." The agreement was clear:

> "The pursuit of any such remedy shall not constitute a waiver of the right of any party to have all other claims or disputes resolved by arbitration."

*Walther v. Sovereign Bank*, 386 Md. 412, 419, 872 A.2d 735, 739 (2005).

Court for Queen Anne's County to establish a mechanic's lien. It did so, we are told, in the words of the majority opinion, 392 Md. at 606–07, 898 A.2d at 475 (2006), because Winchester was "[c]oncerned that the statutory time for filing a petition for mechanics' lien was (1) getting close, and (2) might be regarded as jurisdictional or preclusive in nature, rather than as a mere statute of limitations that could be waived or tolled by agreement of the parties." [2] *Id.* Brendsel eventually, through a letter from counsel, rejected in full Winchester's claim for fees and overhead costs. As the majority notes, "[t]he letter acknowledged a net balance owing under the contract of $604,565 but claimed credits against that balance of $871,872 for overcharges and construction defects, leaving a new balance to Brendsel." 392 Md. at 607, 898 A.2d at 475.

On January 9, 2004, Winchester, in an amended petition, filed to enforce the mechanic's lien, and asked for "a stay of proceedings after an interlocutory lien is established pending the outcome of an arbitration proceeding between the parties hereto." 392 Md. at 608, 898 A.2d at 476. On March 5, 2004, a consent motion was filed by both parties, agreeing that with limited discovery, some issues could be resolved. 392 Md. at 608–09, 898 A.2d at 476. On March 8, 2004, an interlocutory lien was entered in favor of Winchester, declaring that neither the consent motion nor anything that was conducted during the discovery period would waive the right to arbitration. 392 Md. at 608–09, 898 A.2d at 476. Brendsel filed an answer and counterclaim. 392 Md. at 608–09, 898 A.2d at 476. Winchester claimed that the counterclaim was also subject to arbitration. 392 Md. at 608–09, 898 A.2d at 476–77. After the discovery period ended, Brendsel filed a motion for partial summary

---

2. There is a temporal element to the Maryland mechanic's lien statute; ordinarily, the right to a mechanic's lien is lost, if not pursued. Maryland Code (1974, 2003 Replacement Volume) § 9–105 of the Real Property Article provides, as relevant:

"(a) In order to establish a lien under this subtitle, a person entitled to a lien shall file proceedings in the circuit court for the county where the land or any part of the land is located within 180 days after the work has been finished or the materials furnished...."

judgment. 392 Md. at 609, 898 A.2d at 476–77. Again, Winchester filed a petition to compel arbitration and to stay all further judicial proceedings, contending that "through its motion for partial summary judgment, Brendsel was seeking a ruling on the merits of its counterclaim, which was subject to arbitration." 392 Md. at 609, 898 A.2d at 476. On July 6, 2004, Brendsel filed an opposition to the petition to compel arbitration, using arguments similar to those argued *sub judice*. 392 Md. at 609, 898 A.2d at 476–77. The appellants *sub judice*, in challenging the stay, contend that Winchester, in seeking an interlocutory mechanic's lien, waived its right to arbitrate any disputes arising from the contract. The Majority, like the trial court, rejects the appellants' argument, concluding instead that, by filing a court action to establish an interlocutory mechanic's lien and obtaining one, Winchester did not waive its right to compel arbitration of an arbitrable dispute. 392 Md. at 603–04, 898 A.2d at 473.

I do not understand how the seeking of a mechanic's lien, under these factual circumstances, is not a waiver of the right to arbitration. As I see it, the issue really is one of contract interpretation, to which, as we have so often pointed out, the usual canons of statutory interpretation apply. *See Tomran v. Passano*, 391 Md. 1, 891 A.2d 336 (2006) ("The cardinal rule of contract interpretation is to give effect to the parties' intentions"). We have to determine the intent of the parties to the contract. *Myers v. Kayhoe*, 391 Md. 188, 198, 892 A.2d 520, 526 (2006). In seeking that intent, we start with the words of the contract, giving them their usual and ordinary meaning. *Myers*, 391 Md. at 198, 892 A.2d at 526. If the words used are clear and unambiguous, we give effect to them, as written, *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 251, 768 A.2d 620, 630 (2001), and we will look no further for the parties' intent, nor will we add or delete words to achieve a meaning not otherwise evident from a fair reading of the language used. 363 Md. at 251, 768 A.2d at 630. In that situation, it is irrelevant that the parties, or, as in this case, one of the parties, interpreted the contract differently or thought it meant something else. *Dennis v. Fire & Police Employees'*

*Ret. Sys.,* 390 Md. 659, 656–57, 890 A.2d 737, 747 (2006) ("[T]he clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean").

This is the objective law of contract interpretation and construction, *Owens–Illinois, Inc. v. Cook,* 386 Md. 468, 496–497, 872 A.2d 969, 985 (2005); *General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985); *Aetna Casualty & Surety Co. v. Insurance Commissioner,* 293 Md. 409, 420, 445 A.2d 14, 19 (1982), which we have explained, as follows:

> "A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away [sic] to what the parties thought that the agreement meant or intended it to mean. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean. . . . As a result, when the contractual language is clear and unambiguous, and in the absence of fraud, duress, or mistake, parol evidence is not admissible to show the intention of the parties or to vary, alter, or contradict the terms of that contract."

*Owens–Illinois, Inc. v. Cook,* 386 Md. at 496–497, 872 A.2d at 985, *quoting General Motors Acceptance Corp. v. Daniels,* 303 Md. at 261, 492 A.2d at 1310. Only when the language of the contract is ambiguous will we look to extraneous sources for the contract's meaning. In that event, the intention of the parties must be established through relevant parol evidence or

by strictly construing the clause against its author. *Adloo v. H.T. Brown Real Estate, Inc.*, 344 Md. 254, 267, 686 A.2d 298, 304 (1996).

It also is relevant, instructive, even, that the mechanic's lien statute is itself clear and unambiguous with respect, not only to the time requirements that must be met as a condition to obtaining the lien, but, as well, with respect to the property to which it has applicability. Maryland Code (1974, 2003 Replacement Volume) § 9–102(a) of the Real Property Article is relevant to this case. It provides:

> "(a) Every building erected and every building repaired, rebuilt, or improved to the extent of 15 percent of its value is subject to establishment of a lien in accordance with this subtitle for the payment of all debts, without regard to the amount, contracted for work done for or about the building and for materials furnished for or about the building, including the drilling and installation of wells to supply water, the construction or installation of any swimming pool or fencing, the sodding, seeding or planting in or about the premises of any shrubs, trees, plants, flowers or nursery products, the grading, filling, landscaping, and paving of the premises, and the leasing of equipment, with or without an operator, for use for or about the building or premises."

So, too, is the fact, undenied by Winchester, that it is an experienced contractor. Therefore, we are justified in assuming that it was either well aware, or chargeable with knowledge, of the mechanic's lien statute, its applicability and, more importantly, the time constraints to which it was subject.

As we have seen, this is a contract for the renovation of an historic plantation. We must presume, there being no contention to the contrary, that it was an arm's length one, entered into voluntarily and that the terms were negotiated, or, at least, not dictated by one party to the other one. Moreover, it involved extensive work to be done by Winchester. Consequently, and this is not disputed, the property that was the subject of the contract was subject to the establishment of a mechanic's lien. Indeed, Winchester's seeking to establish

one on the property confirms that this is so. We have also seen that the contract clearly and unambiguously provided for the use of arbitration as the preferred and exclusive dispute resolution method; it requires that "all" covered claims or disputes be "decided by arbitration." Yet the contract into which Winchester voluntarily entered, the contract that provided that arbitration is the exclusive remedy, makes absolutely no reference to the mechanic's lien statute or the appellee's entitlement to utilize it in supplementation of that exclusive remedy. Thus, it is clear beyond cavil that no exception to the exclusive remedy of arbitration was made for mechanic's lien proceedings.

That the parties agreed that arbitration would be their exclusive remedy—the only method available for the resolution of claims and disputes arising under or relating to the contract—and did not, as certainly they could have done, see *Walther v. Sovereign Bank*, 386 Md. 412, 418–419, 872 A.2d 735, 739 (2005), preserve their right to resort to supplemental or ancillary relief, statutory or otherwise, leads inexorably to the conclusion that the parties intended that only arbitration would be available and must be used; all other relief, remedies, or dispute resolution methods were excluded. In my view, it is not even arguable that the parties contemplated the hybrid proceedings the majority endorses. It is clear, in any event, that the contract does not support such an approach.

The claim that Winchester has against the appellants arises out of, or relates to, the contract documents or the breach of the contract. It also is the basis for the mechanic's lien that Winchester seeks. Thus, the claim that Winchester would pursue in arbitration is the same claim that underlies its mechanic's lien proceedings and, of course, the property on which the lien would be placed is that out of which the claim itself arises or relates. Because the contract did not except the mechanic's lien proceedings from its coverage, from the claims and disputes to which arbitration must be utilized for resolution, or expressly permit such proceedings as a placeholder, a provision that could have been included if agreed to by the appellants, it follows that Winchester was not author-

ized to resort to the court. Rather, it was required to initiate and pursue arbitration. By resorting to court in the first instance, even if it was intended to be only for a short time, and in aid of arbitration, when its contract did not authorize it, eschewing, in the process, as an initial matter, the arbitration remedy, Winchester waived its right to arbitration. *See NSC Contractors, Inc. v. Borders,* 317 Md. 394, 564 A.2d 408 (1989) (holding that by filing a claim for monetary damages seeking final judgment order against architect, contractor of project waived arbitration, provided by contract, of dispute as to proper amount of money withheld); *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.,* 294 Md. 443, 450 A.2d 1304 (1982) (holding that a party waives right to arbitrate an issue by participation in a judicial proceeding, the waiver is limited to those issues raised and/or decided in the judicial proceeding and, absent additional evidence of intent, the waiver does not extend to any unrelated issues arising under the contract); *RTKL Assoc., Inc. v. Four Villages Ltd. Partnership,* 95 Md.App. 135, 144, 620 A.2d 351, 355 (1993) (holding that a party's pursuit of litigation before seeking to compel arbitration, as previously agreed upon, resulted in a waiver of the right to arbitration).

The majority, like the appellee, relies on *Frederick Contractors, Inc. v. Bel Pre Med. Ctr., Inc.,* 274 Md. 307, 334 A.2d 526 (1975), and *Walther v. Sovereign Bank,* 386 Md. 412, 872 A.2d 735 (2005). The majority acknowledges, and I agree, that these cases do not address the precise issue this case presents. I go further; these cases are completely inapposite, although, in one particular, *Walther* actually supports my position.

In *Bel Pre Med. Ctr., Inc.,* as in this case, the parties entered into a contract, pursuant to which Frederick Contractors, Inc. undertook to build an addition to Bel Pre's nursing home and in which they agreed, with exceptions not here relevant, that "[a]ll claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof ... shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the

parties mutually agree otherwise." 274 Md. at 310–311, 334 A.2d at 528. When Frederick did not receive all of the compensation it felt it had earned, it recorded a mechanics' lien in the Circuit Court for Montgomery County, and more than thirty (30) days later, filed in that court a bill of complaint to foreclose the lien. 274 Md. at 309, 334 A.2d at 527–528. Thereafter, almost another thirty (30) days later, Bel Pre moved to strike the mechanic's lien, arguing both that its contract with Frederick required the arbitration of any disputes arising out of the contract and that it had demanded that dispute resolution method. 274 Md. at 309, 334 A.2d at 528. Despite the denial of its motion to strike, Bel Pre persisted in its answer to the Bill to insist that the contract required arbitration, prompting Frederick to seek injunctive relief on the ground that Bel Pre had not timely demanded that the dispute be arbitrated. 274 Md. at 309, 334 A.2d at 528. The trial court granted the relief, permanently enjoining Bel Pre and Frederick from proceeding to arbitration. 274 Md. at 309, 334 A.2d at 528. The Court of Special Appeals vacated the permanent injunction and remanded for the entry of an order compelling arbitration and staying further proceedings in the Circuit Court. *Bel Pre Med. Ctr., Inc. v. Frederick Contractors, Inc.*, 21 Md.App. 307, 330, 320 A.2d 558, 572 (1974).

Although the intermediate appellate court acknowledged what I contend *sv' judice*, that "[W]hen the parties have agreed to submit any and all controversies arising out of the contract to an arbitrator, all issues other than those expressly and specifically excluded must be submitted to arbitration," 21 Md.App. at 327, 320 A.2d at 569–70, because the refusal to arbitrate was based not on a contention that the substantive issues were not arbitrable, but on the contention that arbitration had not timely been made, *id.* at 322, 320 A.2d at 567, it perceived that "the question of substantive arbitrability [was] not before [it]," even though the contractor filed the mechanics' lien proceedings without first resorting to arbitration. *Id.* at 322–23, 320 A.2d at 567. Missing from that analysis is any focus on the obligation of the contractor, clearly a party to the

arbitration contract, to itself initiate arbitration proceedings, especially given Bel Pre's motion to strike. Also worth noticing is the inconsistency of the approach with the parties' contractual undertakings, holding one party to the terms of its contract, while, presumably precisely because of that fact,[3] excusing the other. At the very least, therefore, the issue the case *sub judice* presents was not before the Court of Special Appeals in *Bel Pre Med. Ctr.* for decision, and it certainly did not decide it.

The Court of Appeals focused on the effect of the filing of a demand to arbitrate on earlier filed proceedings to foreclose a mechanics' lien, rather than on the right of Frederick to have filed the mechanics' lien proceedings in the first instance, which was the thrust of Bel Pre's motion to strike. Concluding that "the timeliness of a demand for arbitration is a threshold question", for the court, 274 Md. at 315, 334 A.2d at 531, it perceived "the critical question [to be] what effect the demand for arbitration had upon the pending action." *Id.* Thus, the Court saw its task as harmonizing the Maryland Arbitration Act with the concept of the mechanics' lien law. 274 Md. at 315, 334 A.2d at 531. It was in this context that the Court stated that "Frederick took timely action to assert its lien," *id.,* and that "an attachment would lie to enforce any award which might be made by arbitrators to whom the controversy was to be submitted for determination after the action had been instituted." *Id.* at 315, 334 A.2d at 531, *citing Shriver v. State ex rel. Devilbiss,* 9 G. & J. 1, 9 (Md.1837). *Shriver,* however, was decided on the basis of two statutes

---

**3.** I assume this to be the case because, having acknowledged that "the parties" agreed to arbitration and noting the contractor's failure to initiate such proceedings, the focus shifted immediately to the owner's demand for arbitration "of the issues concerning the amount of money . . . due and owing," the timeliness as to which there was some dispute. *Bel Pre Med. Ctr., Inc. v. Frederick Contractors, Inc.,* 21 Md.App. 307, 322, 320 A.2d 558, 567 (1974). Indeed, the court characterized the issue as whether a broad arbitration agreement, as in that case, precluded a court from determining the amount of money due for labor and materials supplied by a contractor to an owner. 21 Md.App. at 314, 320 A.2d at 562.

addressing the submission of pending cases to arbitration, and was decided long before the enactment of the Maryland Arbitration Act, codified at Maryland Code (1973, 2002 Replacement Vol., 2005 Supp.) title 3, subtitle 2 of the Courts & Judicial Proceedings Article. Under the Maryland Arbitration Act, executory agreements to arbitrate, previously unfavored when *Shriver* was decided, *see Eisel v. Howell*, 220 Md. 584, 587–88, 155 A.2d 509, 511 (1959); *Tomlinson v. Dille*, 147 Md. 161, 167, 127 A. 746, 748 (1925),[4] became "favored." *See Gold Coast Mall, Inc. v. Larmar Corp.* 298 Md. 96, 103, 468 A.2d 91, 95 (1983) (noting a legislative policy favoring enforcement of executory agreements to arbitrate); *see also Cheek v. United Healthcare of the Mid–Atlantic, Inc.*, 378 Md. 139, 835 A.2d 656 (2003) (explaining arbitration's favored status); *Holmes v. Coverall North America, Inc.*, 336 Md. 534, 649 A.2d 365 (1994) (observing the Maryland legislative intent to favor arbitration); *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 294 Md. 443, 450 A.2d 1304 (1982) (expressing the legislative policy favoring arbitration). In context, therefore, the statement, on which the majority principally relies, "[w]hile the parties may have bound themselves by the general conditions of the contract to accept the resolution of disputes by arbitration, they in no way limited themselves in the manner by which payment of an award may be enforced" is not surprising.

It is interesting, however, that the authority cited is Maryland Code (1973, 2002 Repl. Volume) § 3–202 of the Courts and Judicial Proceedings Article, which provides:

"An agreement providing for arbitration under the law of the State confers jurisdiction on a court to enforce the agreement and enter judgment on an arbitration award."

---

4. This is contrasted with the attitude toward suits to enforce arbitration awards, which was to view them as "favored" actions. *See Parr Construction Co. v. Pomer*, 217 Md. 539, 543, 144 A.2d 69, 72 (1958); *Dominion Marble Co. v. Morrow*, 130 Md. 255, 260, 100 A. 292, 293 (1917); *Lewis v. Burgess*, 5 Gill. 129, 131 (1847); *Caton v. MacTavish*, 10 Gill. & J. 192, 216–217 (1838).

Certainly this provision does not suggest, not to mention require, that a party to an arbitration agreement is free to come to court, in contradiction of the express terms of the contract, if that party believes that the failure to do so would, or potentially could, affect the recovery to which the party is due. That eventuality is a matter that could, and should, have been addressed when the parties contracted for the resolution of potential disputes.

In *Walther*, the arbitration agreement at issue provided:

"BINDING ARBITRATION. The parties agree that any claim, dispute or controversy arising from or relating to this agreement or the relationships which result from this agreement, including the validity of this arbitration clause or the entire agreement, shall be resolved by binding arbitration by and under the Code of Procedure of the National Arbitration Forum in effect at the time the claim is filed. This arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1–16. Judgment upon the award may be entered in any court having jurisdiction. Nothing in this agreement shall be construed to limit the right of any party to 1) foreclose against real or personal property or other security by an exercised power of sale under a security instrument or applicable law, 2) exercise self-help remedies, or 3) obtain provisional or ancillary remedies with regard to such securities, including without limitation, injunctive relief, sequestration, attachment, garnishment, or the appointment of a receiver from a Court having competent jurisdiction before, during or after the pendency of any arbitration. *The pursuit of any such remedy shall not constitute a waiver of the right of any party to have all other claims or disputes resolved by arbitration.* The parties agree that any dispute subject to arbitration shall not be adjudicated as a class action or consolidated class proceeding. By signing this agreement, the parties acknowledge that they had a right or opportunity to litigate disputes through a court, but that they preferred to resolve any disputes through arbitration. The

parties acknowledge that they are waiving their right to jury trial by consenting to binding arbitration."

386 Md. at 418–419, 872 A.2d at 739 (emphasis added). Thus, the parties in that case were explicit in their agreement with regard to what was not covered by the arbitration agreement, exempting those actions or proceedings as to which the court, or another venue, would be appropriate. Consequently, *Walther*, rather than supporting the majority, provides the answer for how a party with a court remedy that can not be duplicated in arbitration can avoid the dilemma that choosing arbitration and excluding the judicial forum creates. To be sure, the *Walther* solution may be subject to other challenges, *see* 386 Md. 412, 450, 872 A.2d 735, 758 (Bell, C.J., dissenting) (critiquing *Walther* on lack of mutuality grounds), but the availability of the court remedy would not be one of them.

Exempting the initiation, if not the completion, of the mechanics' lien remedy from an arbitration agreement, which does not provide any exception for it, raises fairness concerns. It gives one of the parties to the agreement an advantage for which, as the agreement reflects, the parties did not bargain. Because a plain reading of an arbitration agreement like the one at issue in this case leads necessarily to the conclusion that neither party is entitled to pursue any remedy other than arbitration, reading into the contract the exception for court proceedings in aid of later execution really is a rewriting of the contract, something we are supposed not to do. Worse, however, is that the rewrite is in favor one party to the detriment of the other, simply because there is a statutory remedy which the Legislature enacted for the benefit of that party.

To be sure, mechanics' liens are available for the protection of materialmen, and it also is appropriate that such proceedings be favored. Mechanics' liens are not mandatory, however. A materialman need not use the proceedings; he or she is not required to get a lien or, having filed it, foreclose on it. The materialman could waive entitlement to its advantages. This could, and does, occur by not filing the appropriate papers in a timely manner, or by contract, including arbitra-

tion contracts, either by expressly so providing or by using terms inconsistent with the mechanics' lien remedy. That is true of, and is not inconsistent with, the treatment of other favored and even fundamental protections. *See Walther*, 386 Md. 412, 872 A.2d 735 (holding that although the right to a jury trial is fundamental under the Maryland Declaration of Rights, parties can contractually waive their right to a jury trial, which ordinarily requires that the waiver be "knowing and intelligent"), *Twining v. National Mortg. Corp.*, 268 Md. 549, 302 A.2d 604 (1973) (holding that either party to a contract may waive any of the provisions made for his benefit), *Lanahan v. Heaver*, 77 Md. 605, 26 A. 866 (1893) (holding that a promise to relinquish the constitutional right to a jury trial is a sufficient consideration for an agreement to submit a civil case to the court). *See also ST Systems Corp. v. Maryland Nat. Bank*, 112 Md.App. 20, 684 A.2d 32 (1996) (holding that even though the right to a jury trial is fundamental, parties can contractually waive their right to a jury trial), *Meyer v. State Farm Fire and Cas. Co.*, 85 Md.App. 83, 91, 582 A.2d 275, 278 (1990) ("An agreement to arbitrate either future or existing disputes involves more than just the waiver of a right to jury trial, although that is certainly implicit in such an agreement").